PUBLISHED

# UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

HARMAN MINING COMPANY; OLD
REPUBLIC INSURANCE COMPANY,

*Petitioners,*

v.

DIRECTOR, OFFICE OF WORKERS'
COMPENSATION PROGRAMS, UNITED
STATES DEPARTMENT OF LABOR;
GARY LOONEY,

*Respondents.*

No. 05-1620

HARMAN MINING CORPORATION; OLD
REPUBLIC INSURANCE COMPANY,

*Petitioners,*

v.

DIRECTOR, OFFICE OF WORKERS'
COMPENSATION PROGRAMS, UNITED
STATES DEPARTMENT OF LABOR;
GARY LOONEY,

*Respondents.*

No. 11-1450

On Petition for Review of Orders
of the Benefits Review Board.
(04-109-BLA; 09-740-BLA)

Argued: January 24, 2012

Decided: May 15, 2012

Before NIEMEYER, MOTZ, and KING, Circuit Judges.

Petition for review denied by published opinion. Judge Motz wrote the opinion, in which Judge Niemeyer and Judge King joined.

## COUNSEL

**ARGUED:** Mark Elliott Solomons, GREENBERG TRAURIG, LLP, Washington, D.C., for Petitioners. Ryan Christopher Gilligan, WOLFE, WILLIAMS, RUTHERFORD & REYNOLDS, Norton, Virginia; Helen Hart Cox, UNITED STATES DEPARTMENT OF LABOR, Office of Workers' Compensation Programs, Washington, D.C., for Respondents. **ON BRIEF:** Laura Metcoff Klaus, GREENBERG TRAURIG, LLP, Washington, D.C., for Petitioners. M. Patricia Smith, Solicitor of Labor, Rae Ellen James, Associate Solicitor, Sean G. Bajkowski, Counsel for Appellate Litigation, UNITED STATES DEPARTMENT OF LABOR, Office of Workers' Compensation Programs, Washington, D.C., for Federal Respondent. Joseph E. Wolfe, WOLFE, WILLIAMS, RUTHERFORD & REYNOLDS, Norton, Virginia, for Respondent Gary Looney.

## OPINION

DIANA GRIBBON MOTZ, Circuit Judge:

These appeals arise from an administrative law judge's order, affirmed by the Benefits Review Board, finding that Gary Looney suffered disabling obstructive lung disease arising out of his work as a coal miner and awarding his widow black lung benefits payable by Looney's former employer.

Although Looney's case has followed a tortured procedural path, the proper resolution of these appeals is straightforward. We need only determine if the award of benefits finds support in the record and accords with the Administrative Procedure Act. We hold that it does and so affirm the award of benefits to Looney and deny his former employer's petition for review.

I.

A.

The Black Lung Benefits Act ("the Act"), 30 U.S.C. § 901 *et seq.*, grants benefits to persons (or their surviving dependents) afflicted with pneumoconiosis, which is popularly known as black lung disease. 30 U.S.C. § 901(a). To be eligible for these benefits, a person must prove that he has a total disability due to pneumoconiosis arising out of his employment as a coal miner. *See id.* §§ 901(a), 921; 20 C.F.R. §§ 718.201-204, 725.202. The regulations define "pneumoconiosis" as a "chronic dust disease of the lung and its sequelae, including respiratory and pulmonary impairments, arising out of coal mine employment." 20 C.F.R. § 718.201(a).

The courts have long recognized that pneumoconiosis can take two forms: "clinical" pneumoconiosis and "legal" pneumoconiosis. *See, e.g.*, *Clinchfield Coal Co. v. Fuller*, 180 F.3d 622, 625 (4th Cir. 1999); *Hobbs v. Clinchfield Coal Co.*, 45 F.3d 819, 821 (4th Cir. 1995). In 2000, the United States Department of Labor ("the Department") revised its regulations to mirror this recognition of "legal" pneumoconiosis and to clarify the difference between it and "clinical" pneumoconiosis. The amended regulations provide that clinical pneumoconiosis "consists of those diseases recognized by the medical community as pneumoconioses, *i.e.*, the conditions characterized by permanent deposition of substantial amounts of particulate matter in the lungs and the fibrotic reaction of the lung tissue to that deposition caused by dust exposure in coal mine

employment." 20 C.F.R. § 718.201(a)(1). The amended regulations define legal pneumoconiosis as referring to "any chronic lung disease or impairment and its sequelae arising out of coal mine employment." *Id.* § 718.201(a)(2).

As a part of its 2000 revision of its regulations, the Department also expressly agreed with the courts that legal pneumoconiosis includes "any chronic restrictive or obstructive pulmonary disease arising out of coal mine employment." *Id.*; *see also Warth v. S. Ohio Coal Co.*, 60 F.3d 173, 175 (4th Cir. 1995) (holding that chronic obstructive lung disease "is encompassed within the definition of pneumoconiosis for purposes of entitlement to Black Lung benefits"). Thus, the law is clear that legal pneumoconiosis, compensable by black lung benefits, encompasses "any chronic . . . obstructive pulmonary disease" if the disease "aris[es] out of coal mine employment." 20 C.F.R. § 718.201(a)(2) (emphasis added). A disease arises out of coal mine employment if it is "significantly related to, or substantially aggravated by, dust exposure in coal mine employment." *Id.* § 718.201(b); *see also id.* § 718.203(a) ("In order for a claimant to be found eligible for benefits under the Act, it must be determined that the miner's pneumoconiosis arose at least in part out of coal mine employment.").

## B.

For nearly seventeen years, from 1969 to 1991, Gary Looney worked in coal mines in Virginia. He spent the last ten years of his coal mine employment working as a roof bolter for Harman Mining Company ("Harman"), a job that involved "moderate to heavy manual labor." Looney was also a smoker, regularly smoking cigarettes for several decades. He retired from coal mining in February 1991 and, two years later, filed a claim for black lung benefits.[1]

---

[1]In 2003, doctors diagnosed Looney with lung cancer and he died in 2010. Appellee's Br. at 13.

Over the course of the next decade, Looney's case came before an administrative law judge ("ALJ") seven times. Each time, an ALJ found that Looney was totally disabled due to legal pneumoconiosis and awarded him black lung benefits, payable by Harman. Each time, Harman appealed the award to the Benefits Review Board ("Board"). In the first six appeals, the Board found some aspect of the ALJ's decision to be deficient and remanded for further consideration. On the seventh appeal, however, the Board affirmed the ALJ's award of benefits. Harman then moved the Board for reconsideration en banc, which the Board denied on March 30, 2005.

Two months later, Harman filed a petition for modification with the Department, asserting that the ALJ had made a mistake of fact in determining that Looney's disability arose from his employment as a coal miner. A week later, on May 27, 2005, Harman appealed the original order awarding Looney black lung benefits to this court, and, on the same day, asked us to stay its appeal of the benefits award pending resolution of its petition for modification; we agreed to do so. On June 30, 2009, the ALJ denied the petition for modification; Harman appealed and, a few weeks later, the Board upheld that denial. Harman then appealed the denial of his petition for modification to this court. We removed Harman's first appeal from abeyance and consolidated it with this second appeal.

Thus, in these consolidated appeals, Harman challenges two orders: the order awarding Looney black lung benefits and the order denying Harman's petition for modification. The two orders involve the identical issue of whether Looney's chronic obstructive pulmonary disease ("COPD") arose at least in part out of his employment as a coal miner, as the ALJ found, or solely out of his cigarette smoking, as Harman contends. The parties agree that Looney was totally disabled by COPD and, in these appeals, Harman does not challenge its responsibility for the payment of any black lung benefits due to Looney. Thus, the only issue before us is the cause of Looney's COPD.

## II.

In black lung cases, our review of the Board's order is "limited." *Lewis Coal Co. v. Dir., O.W.C.P.*, 373 F.3d 570, 575 (4th Cir. 2004). We review the decision "to assess whether substantial evidence supports the factual findings of the ALJ and whether the legal conclusions of the [Board] and ALJ are rational and consistent with applicable law." *Id.*

As in all agency cases, we must be careful not to substitute our judgment for that of the ALJ. *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990) ("Ultimately, it is the duty of the administrative law judge reviewing a case, and not the responsibility of the courts, to make findings of fact and to resolve conflicts in the evidence."). Because the ALJ is the trier of fact, we "defer to the ALJ's evaluation of the proper weight to accord conflicting medical opinions." *Stiltner v. Island Creek Coal Co.*, 86 F.3d 337, 342 (4th Cir. 1996). As long as substantial evidence supports an ALJ's findings, "[w]e must sustain the ALJ's decision, even if we disagree with it." *Smith v. Chater*, 99 F.3d 635, 637-38 (4th Cir. 1996). We review the legal conclusions of the Board and the ALJ de novo. *Island Creek Coal Co. v. Compton*, 211 F.3d 203, 208 (4th Cir. 2000).

Given this deferential standard of review, it is not surprising that Harman disavows any argument that the record fails to offer substantial evidence supporting the ALJ's findings of fact. *See, e.g.*, Appellant's Reply Br. at 3 ("[T]his is not a substantial evidence appeal . . . ."); *id.* at 4 (arguing the appeal raises only "questions of law"). Despite this express disavowal, however, Harman intermittently does challenge the ALJ's factual findings. Accordingly, we first explain why our review of the record confirms the wisdom of Harman's stated decision not to challenge the sufficiency of the evidence supporting the ALJ's findings supporting the award of benefits. We then turn to the arguments on which Harman asserts it rests its appeal.

III.

A.

In her exhaustive final opinion awarding benefits (ten single-spaced pages), the ALJ "considered all of the medical evidence" and concluded that Looney had "established by a preponderance of the evidence" that he suffered from "legal pneumoconiosis."

A number of doctors had offered opinions over the years as to the extent and cause of Looney's COPD. But in her final opinion awarding benefits, the ALJ primarily considered the opinions of Drs. J. Randolph Forehand, Emory Robinette, Gregory Fino, and Richard Sargent. The ALJ weighed the opinion of Dr. Forehand, which was supported by the opinion of Dr. Robinette, that Looney's COPD arose from his coal mine employment against the opinions of Drs. Fino and Sargent, who attributed Looney's COPD solely to his smoking. In the end, the ALJ found the "well-reasoned and supported opinion of Dr. Forehand, as supported by the opinion of Dr. Robinette," to be more persuasive. A short review of these doctors' evaluations demonstrates that the ALJ acted well within her authority in "evaluat[ing] . . . the proper weight to accord [the] conflicting medical opinions." *Stiltner*, 86 F.3d at 342.

In addition to physically examining Looney, Dr. Forehand conducted a battery of diagnostic tests. These included a chest x-ray that revealed "interstitial scarring," a vent study that showed an "obstructive ventilatory pattern," and arterial blood gas testing that demonstrated "hypoxemia at rest and with exercise." Based on the results from these tests, the physical examination, and Looney's reported occupational and smoking histories, Dr. Forehand concluded that Looney suffered from chronic obstructive pulmonary disease that arose from "a combination" of exposure to coal dust and smoking, and so

opined that Looney suffered from legal pneumoconiosis.[2] The ALJ did not err in giving determinative weight to Dr. Forehand's opinion because, despite its brevity, the ALJ found that the totality of the report indicated that it was "well-reasoned." *See Compton*, 211 F.3d at 212 ("An ALJ may choose to discredit an opinion that lacks a thorough explanation, but is not legally compelled to do so."); *see also Wolf Creek Collieries v. Dir., O.W.C.P.*, 298 F.3d 511, 522 (6th Cir. 2002) ("[T]he ALJ as factfinder should decide whether a physician's report is sufficiently reasoned because such a determination is essentially a credibility matter." (internal quotation marks omitted)).

The ALJ also noted that Dr. Robinette's opinion supported Dr. Forehand's conclusion that Looney suffered from legal pneumoconiosis. Dr. Robinette, like Dr. Forehand, performed a physical examination of Looney. Dr. Robinette based his opinion on this examination and the results of x-ray, pulmonary function, and arterial blood gas testing. According to Dr. Robinette, these tests revealed that Looney's lungs were "expanded with evidence of mild interstitial pulmonary fibrosis" and his pulmonary function was "compatible with moderate obstructive lung disease." Dr. Robinette diagnosed Looney's COPD as "probably" caused by "a combination of asthma, obstructive lung disease and coal workers' pneumoconiosis."

---

[2]Although, as noted above, Harman specifically eschews any challenge to the evidentiary support for the award of benefits to Looney, it repeatedly criticizes Dr. Forehand for relying on a "minimized smoking habit" and an "inflated work history." *See, e.g.*, Appellant's Br. at 7, 31, 32. The record presents a less dramatic picture. First, the evidence as to the intensity of Looney's smoking varied from one-quarter pack per day up to two packs per day. Moreover, Looney reported to different doctors that he began smoking as early as 1968, or as late as approximately 1980. And although Dr. Forehand did report that Looney had worked in the mines for 21 years while the ALJ found that he had worked for almost 17, this relatively insignificant difference is not the "sort of unacceptable factual assumption that would compel rejection of [Dr. Forehand's] ultimate conclusion." *See Stiltner*, 86 F.3d at 342.

The ALJ recognized that Dr. Robinette's opinion was "not sufficiently unequivocal" to "stand[ ] on its own," but provided support for Dr. Forehand's opinion, on which she relied "most heavily."

In awarding Looney benefits, the ALJ rejected both Dr. Fino's and Dr. Sargent's opinions. At Harman's request, Dr. Fino prepared a 1994 report, without an examination of Looney, which concluded on the basis of Looney's medical records that cigarette smoking alone caused Looney's COPD. Dr. Fino based this conclusion, in part, on his opinion that legal pneumoconiosis "cannot" cause obstructive pulmonary disease. The ALJ found this view hostile to the Act; she certainly did not err in doing so. Rather, courts have long recognized what the 2000 regulations codified—that legal pneumoconiosis includes obstructive lung disease, *see, e.g.*, *Warth*, 60 F.3d at 175, and a robust body of case law holds that an ALJ should not credit expert opinions of doctors who rely on facts or premises that conflict with the Act, *see, e.g.*, *Stiltner*, 86 F.3d at 340-41; *Warth*, 60 F.3d at 174-75; *Thorn v. Itmann Coal Co.*, 3 F.3d 713, 719 (4th Cir. 1993).

The ALJ also found Dr. Sargent's opinion unpersuasive, in part because the ALJ found that he improperly believed "that pneumoconiosis cannot cause disability in the absence of a positive x-ray." The Department's regulations reject this view. *See* 20 C.F.R. § 718.202(b) ("No claim for benefits shall be denied solely on the basis of a negative chest X-ray."). Accordingly, the ALJ did not err in finding Dr. Sargent's opinion unpersuasive.

## B.

The ALJ issued an even more exhaustive opinion denying Harman's petition for modification (nineteen single-spaced pages). After carefully considering the evidence, "both old and new," that Harman offered in support of its petition, the ALJ denied the petition. She found that Harman had "not met

its burden to show that there was a mistake of fact in [the] previous determination that [Looney] has a totally disabling obstructive impairment as a result of his exposure to coal mine dust."

To reach this conclusion, the ALJ painstakingly evaluated the testimony that Harman offered in urging modification including, most relevant to this appeal, a second opinion from Dr. Fino and an opinion from Dr. Kirk Hippensteel. Both doctors disagreed with Dr. Forehand's conclusion that Looney suffered from legal pneumoconiosis.

With regard to Dr. Fino, the ALJ acknowledged that in his most recent testimony, Dr. Fino had "revised his opinions since his earlier report." As Dr. Fino put it, "in 1994, my opinions were a fair amount different than they are now." He now accepted what the 2000 regulations expressly stated—that legal pneumoconiosis can cause obstructive pulmonary disease. Despite this reversal, however, Dr. Fino reiterated his opinion that in Looney's "particular case, . . . coal mine dust was not a clinically significant contributing factor in this man's obstruction." Dr. Fino continued to diagnose Looney's obstructive pulmonary disease as caused entirely by cigarette smoking. Dr. Fino's professed conversion was not sufficient to persuade the ALJ to credit his opinion. Instead, the ALJ awarded Dr. Fino's testimony little weight, offering several reasons for her decision.

First, the ALJ found that Dr. Fino relied heavily on general statistics rather than particularized facts about Looney. The record, including the transcript of Dr. Fino's 2009 deposition, certainly offers substantial support for this finding. For instance, when Dr. Fino was asked "to point to specific factors" in Looney's case that allowed him "to distinguish the effects of [Looney's] cigarette smoking from those of coal mine dust," Dr. Fino "relied on statistics" to answer. Dr. Fino's discussion of "average" loss of FEV1 (forced expiratory volume in one second) in coal miners apparently did not

engender the ALJ's confidence that Dr. Fino had provided an individualized determination that Looney's COPD was not caused by coal dust.

Additionally, the ALJ found that Dr. Fino's opinion relied on his view that the "amount of obstruction caused by coal dust inhalation is directly related to the amount of coal mine dust inhaled and retained within the lung tissue." Because Looney's "x-ray, CT scan, and pathological evidence . . . showed clinically insignificant coal dust retention in [Looney's] lungs, [Dr. Fino] concluded that coal mine dust was not a clinically significant factor in [Looney's] obstruction." But, as the ALJ noted less than a page earlier in her opinion denying modification, Dr. Fino was not provided with Looney's most recent 2008 CT scans or x-ray, both of which one of the experts read as "positive for pneumoconiosis."

Moreover, the ALJ found that Dr. Fino's opinion indicated that he believed that "coal dust induced obstructive lung disease is insignificant where the miner does not suffer from clinically significant pneumoconiosis, i.e., pneumoconiosis [discernible] by chest x-ray, CT scan, or pathology." The record provides substantial evidence to support the ALJ's finding that this was Dr. Fino's opinion. This opinion, however, finds no support in the Department's regulations, which separate clinical and legal pneumoconiosis into two different diagnoses, *see* 20 C.F.R. § 718.201(a)(1)-(2), and provide that "[n]o claim for benefits shall be denied solely on the basis of a negative chest X-ray," *id.* § 718.202(b). Moreover, this view conflicts with the recognition in the preamble to the 2000 regulations that coal dust can induce obstructive pulmonary disease independent of clinically significant pneumoconiosis. *See* 65 Fed. Reg. 79,938-79,940 (Dec. 20, 2000)). The ALJ found this conflict to "compromise[ ]" the "probative value of Dr. Fino's report."

Harman vehemently objects to the ALJ's brief invocation of the preamble to the regulations. We address below Har-

man's legal arguments on that subject. For now, it suffices to note that substantial evidence in the record clearly supports the ALJ's findings as to the content of Dr. Fino's testimony. Moreover, even if we were to agree with Harman that the ALJ's invocation of the preamble in discrediting Dr. Fino's opinion was improper (which we do not), any such error would likely be harmless because the ALJ provided the independent reasons outlined above for dismissing Dr. Fino's opinion. *See Compton*, 211 F.3d at 213 n.13 (declining to reach the employer's other arguments that the ALJ erred in discrediting doctors' opinions "in light of [the reviewing court's] conclusion that there was a sufficient factual basis to support one reason for discrediting each opinion").

Finally, in denying Harman's petition for modification, the ALJ also examined the testimony of Dr. Hippensteel. Like Dr. Fino, Dr. Hippensteel disagreed with Dr. Forehand's conclusion and opined that cigarette smoking alone had caused Looney's obstructive pulmonary disease. The ALJ found that Dr. Hippensteel's opinion did not merit significant weight because he relied heavily on the pathology reports of Dr. Richard L. Naeye, which the ALJ found to be of "very limited, if any, use." The ALJ explained that Dr. Naeye's reports were "confusing," based on only a "fraction" of the available tissue samples from Looney's lungs, addressed only the issue of whether Looney's lung tissue showed evidence of clinical rather than legal pneumoconiosis, and did not explain why Looney's obstructive pulmonary disease was attributable to smoking, rather than exposure to coal dust. In addition, the ALJ noted that it was unclear whether Dr. Naeye reviewed the 2008 x-ray or chest CT scan readings, which showed lesions of pneumoconiosis, in coming to his conclusions. By relying so heavily on Dr. Naeye's reports, the ALJ found that Dr. Hippensteel compromised the reliability of his own conclusions.

Moreover, the ALJ found Dr. Hippensteel's opinions suffered from some of the same flaws as Dr. Naeye's reports.

Like Dr. Naeye's reports, the ALJ found Dr. Hippensteel's opinions to be "clearly focused on the existence of clinical, and not legal pneumoconiosis, and thus, . . . simply not relevant" to whether Looney suffered from legal pneumoconiosis. Furthermore, although Dr. Hippensteel made the "summary statement" that the microscopic data showed that Looney's obstructive disease was caused by cigarette smoking, he failed to explain how his findings supported that conclusion or how the data showed that Looney's obstructive disease "was not due at least in part to his coal dust exposure."

Thus, after considering with care all of the evidence Harman submitted in support of its petition for modification and weighing the doctors' conflicting opinions, the ALJ denied the petition, concluding that Harman was "not entitled to modification." Substantial evidence supports that finding, just as it did the ALJ's earlier finding that Looney had established by a preponderance of the evidence his entitlement to benefits.

The above summary of the ALJ's rationale demonstrates the sufficiency of the evidence—particularly given, as noted above, that Harman disavows any such challenge.

IV.

Accordingly, we turn to the arguments that Harman claims require reversal. Harman contends that in awarding black lung benefits to Looney, the ALJ and the Board violated the Administrative Procedure Act ("APA"). Its arguments uniformly fail.

A.

Primarily, Harman objects to the ALJ's and the Board's invocation of the preamble to the 2000 regulations, spilling much ink in its briefs on why this reference violates the APA.

We note at the outset that Harman exaggerates the reliance on the preamble. Despite the number of written opinions and doctors involved in Looney's case, and the length and thoroughness of the numerous administrative opinions, the reference to the preamble was very limited. Thus, although a casual reader of Harman's briefs might assume that the ALJ rested her entire rationale on the preamble, this is simply not the case. Actually, the ALJ did not at all rely on the preamble when awarding Looney black lung benefits, but only referred to it in her opinion rejecting Harman's petition for modification, a reference the Board subsequently upheld as "permissibl[e]."

More importantly, Harman's attack on the limited invocation of the preamble is unjustified.[3] The amended regulations provide that clinical pneumoconiosis and legal pneumoconiosis are different diagnoses, and that legal pneumoconiosis includes chronic obstructive pulmonary disease. 20 C.F.R. § 718.201(a)(1)-(2). The preamble to the regulations simply sets forth the medical and scientific premises relied on by the Department in coming to these conclusions in its regulations. Harman itself characterizes the preamble in the same way. *See* Appellant's Br. at 16 (characterizing the preamble as "describing some of the research done concerning the effects of pneumoconiosis and cigarette smoking"). Yet Harman contends that the ALJ violated the APA by finding Dr. Fino's opinion to be less credible because his views conflicted with the Department's position set forth in the preamble that legal pneumoconiosis, in the form of obstructive pulmonary disease, can exist independently of clinical pneumoconiosis. We can find no support for this argument. Although the ALJ did

---

[3]Notably, Harman does not dispute the substance of the Department's positions in the preamble. *Cf. Midland Coal Co. v. Dir., O.W.C.P.*, 358 F.3d 486, 490 (7th Cir. 2004) (noting that the court would "credit the position adopted in benefits proceedings by the Department of Labor" on a question of scientific fact "unless the mine operators produced the type and quality of medical evidence that would invalidate a regulation").

not need to look to the preamble in assessing the credibility of Dr. Fino's views, we conclude that the ALJ was entitled to do so and the Board did not err in affirming her opinion.[4]

We note that the only other circuits to address the question have upheld an ALJ's invocation of the same preamble. *See Helen Mining Co. v. Dir., O.W.C.P.*, 650 F.3d 248, 256 (3d Cir. 2011) (noting that "[t]he ALJ gave less weight" to the opinions of an employer's expert because it was "inconsistent with 20 C.F.R. § 718.202(a)(1)-(4) and with the preamble to the regulations"); *Consolidation Coal Co. v. Dir., O.W.C.P.*, 521 F.3d 723, 726 (7th Cir. 2008) (describing as "sensible" the ALJ's decision to give little weight to the opinion of employer's expert because, in part, it conflicted with the preamble's statements on the clinical significance of coal dust-induced COPD). Tellingly, Harman does *not* contend that these courts erred. Rather Harman attempts to distinguish these cases, asserting that they do not "condone what the ALJ did in this case." Appellant's Br. at 23. In fact, both cases "condone" precisely the same sort of use of the preamble.

The Third Circuit rejected an employer's argument, very similar to Harman's, that the ALJ improperly relied on the preamble to discredit the opinion of the employer's expert because the preamble "lacks the force of law and cannot provide a legal basis to give an opinion less weight." *Helen Mining*, 650 F.3d at 256. The court found that the ALJ reasonably concluded that the expert's views were at odds with the gov-

---

[4]Harman points to our opinion in *Home Concrete & Supply, LLC v. United States*, 634 F.3d 249 (4th Cir. 2011), *aff'd*, ___ S. Ct. ___, No. 11-139, 2012 WL 1413964 (April 25, 2012), as supporting its position. That case provides a clear example of a regulatory preamble on which any reliance would be problematic. For there we concluded that the preamble *contradicted* the plain statutory language. *Id.* at 256-57. For this reason, we properly refused to defer to the IRS's interpretation of the statute contained in the preamble. By contrast, here, the preamble is entirely consistent with the Act and its regulations and simply explains the scientific and medical basis for the regulations.

erning regulations and that the ALJ's reference to the preamble offered "unquestionabl[e] support[ ]" for this conclusion. *Id.* at 257.

The Seventh Circuit "condoned" an ALJ's even more robust reliance on the preamble. There, as here, the ALJ dismissed the opinion of an employer's doctor that smoking alone caused a particular miner's obstructive lung disease because, in the doctor's view, "miners rarely have clinically significant obstruction from coal dust." *Consolidated Coal Co.*, 521 F.3d at 726. Relying on the preamble, the Seventh Circuit rejected the employer's argument that the ALJ had erred in doing so. The court explained that the ALJ had "sensibl[y]" dismissed the doctor's opinion, in part, because in the preamble "the Department of Labor reviewed the medical literature on this issue and found that there is consensus among scientists and researchers that coal dust-induced COPD is clinically significant." *Id.*

Perhaps in an attempt to circumvent these cases, Harman manufactures a legal claim based on the APA—that the ALJ's and the Board's invocation of the preamble violates the APA's rulemaking requirements because the preamble was not subjected to notice-and-comment rulemaking. This argument also fails. The ALJ cited the preamble not to imbue it with the force of law or to transform it into a legislative rule, but simply as a source of explanation as to the Department's rationale in amending the regulations. *Cf. Wy. Outdoor Council v. U.S. Forest Srvc.*, 165 F.3d 43, 53 (D.C. Cir. 1999) ("Although the preamble does not 'control' the meaning of the regulation, it may serve as a source of evidence concerning contemporaneous agency intent."). Because the ALJ found Dr. Fino's views conflicted with that rationale, it was well within her discretion to find his opinion less persuasive. So too the Board did not err in concluding that the ALJ "permissibly" referenced the preamble in making her credibility determination about Dr. Fino's opinion.

B.

Next, Harman maintains that the ALJ's invocation of the preamble violates the APA because the preamble was not placed in the administrative record. This argument too is meritless. The APA does provide that "[t]he transcript of testimony and exhibits, together with all papers and requests filed in the proceeding, constitutes the exclusive record for decision." 5 U.S.C. § 556(e). But the APA does not provide that public law documents, like the Act, the regulations, and the preamble, need be made part of the administrative record. Harman cites no authority supporting its contrary view and we have found none.

C.

Finally, Harman contends that the ALJ's weighing of the evidence violated the APA's requirement that agency decisions must include a statement of "findings and conclusions, and the reasons for bases therefor, on all material issues of fact, law, or discretion presented on the record." 5 U.S.C. § 557(c)(3)(A). But even Harman recognizes that the APA does not impose a "duty of long-windedness" on an ALJ. Appellant's Br. at 29 (citing *Lane Hollow Coal Co. v. Dir., O.W.C.P.*, 137 F.3d 799, 803 (4th Cir. 1998)); *see also Piney Mountain Coal Co.*, 176 F.3d at 762 n.10 (noting that the APA does not require "administrative verbosity or pedantry"). To the contrary, "[i]f a reviewing court can discern what the ALJ did and why [s]he did it, the duty of explanation [under the APA] is satisfied." *Piney Mountain Coal Co.*, 176 F.3d at 762 n.10 (internal quotation marks omitted).

As our discussion of the substantial evidence underlying the ALJ's opinions makes clear, these opinions leave no question as to why the ALJ found the views of Drs. Forehand and Robinette more persuasive than those of Drs. Fino, Sargent, and Hippensteel. Harman may disagree with the ALJ's reasons, but it cannot successfully argue that the ALJ failed to

explain those reasons or that those reasons were impermissible.

## V.

Ultimately, the record compels us to uphold the award of black lung benefits in this case. Harman repeatedly contends that the ALJ's reliance on the opinions of Drs. Forehand and Robinette, over those of Drs. Fino, Sargent, and Hippensteel, reflects its application of an "irrebutable presumption" that all obstructive lung disease constitutes legal pneumoconiosis. Appellant's Br. at 17, 18, 31; Appellant's Reply Br. at 5-6. That dramatic overstatement is simply wrong. As explained within, the record here contains conflicting medical opinions as to whether Looney suffered from legal pneumoconiosis. The ALJ's role, as fact-finder, was to resolve such conflicts. *Consolidation Coal Co. v. Borda*, 171 F.3d 175, 185 (4th Cir. 1999). This is precisely what the ALJ did—she conscientiously (and repeatedly) weighed the expert opinions and resolved the conflicts in favor of Looney. Even if we might have weighed the evidence at issue differently than the ALJ, on review, we defer to her evaluation of the appropriate weight to accord these conflicting medical opinions.

*PETITION FOR REVIEW DENIED*