TRAXLER, Chief Judge,
dissenting:
With respect, I dissent. In my opinion, the ALJ’s decision to award benefits is not supported by substantial evidence, and the ALJ erred in shifting the burden to West-moreland to disprove pneumoconiosis. I also believe the ALJ erred in discrediting the opinions of Drs. Zaldivar and Hippen-steel based upon the language in the Preamble.
I.
Highlighting generic findings and general statistics regarding the physiological effects of coal dust exposure and cigarette smoking, and based upon a perceived inability to distinguish between diseases and symptoms caused by them, Dr. Rasmussen summarily concluded that “Cochran’s coal mine dust exposure must be considered a significant contributing factor to” his pulmonary condition. J.A. 39. The conclusion contains the requisite words, but the underlying basis rests in mere speculation and possibilities. See J.A. 39 (“While it is theoretically possible that all of Mr. Cochran’s impairment and lung damage is the consequence of cigarette smoking, it is also theoretically possible it is all due to coal mine dust exposure.”); id. (Cochran’s condition “could be caused by both asthma and toxic effects of smoking and coal mine dust.”); id. (“We have no basis for excluding either” as a cause.).
Apparently accepting the view that neither theoretical cause could be ruled out as a contributing one, the ALJ then compounded the error by imposing upon the employer the burden of proving that coal dust exposure was not a contributing cause, finding that:
it [was] not established that coal dust did not aggravate[] [Cochran’s] asthma. I note, in particular, Dr. Hippensteel’s admission on cross-examination that coal dust could aggravate one’s asthma. Dr. Zaldivar explained that coal mine dust “can cause physiological changes that are eventually indistinguishable from emphysema.”
J.A. 379 (emphasis added).
This is not a valid basis for awarding benefits. See United States Steel Mining *326 Co. v. Dir., OWCP, 187 F.3d 384, 390 (4th Cir.1999) (“Jarrell”) (rejecting as insufficient a similarly speculative opinion offered by Dr. Rasmussen — that it was “ ‘possible that death could have occurred as a consequence of [the miner’s] pneumonia superimposed upon ... his occupational pneumoconiosis’ and therefore ‘[i]t c[ould] be stated that [the miner’s] occupational pneumoconiosis was a contributing factor to his death’ ” (emphasis omitted)); Peabody Coal Co. v. Smith, 127 F.3d 504, 507 (6th Cir.1997) (A “miner’s pneumoconi-osis must be more than merely a speculative cause of his disability” before an ALJ can award benefits). In the absence of x-rays, a biopsy, or a valid regulatory presumption, the burden rests squarely upon the miner to prove by a reasoned medical opinion that his coal mine dust exposure significantly contributed to or substantially aggravated his chronic obstructive pulmonary disease. Dr. Rasmussen’s opinion fails to rise to the requisite standard and the ALJ, in consequence, improperly shifted the burden to the employer to disprove that Cochran suffered from legal pneumo-coniosis. Accordingly, I would reverse the award of benefits.
II.
Even if I were to consider Dr. Rasmussen’s opinion as sufficiently reliable and probative on the issue, I believe the ALJ additionally erred in discrediting the opinions of Drs. Hippensteel and Zaldivar based upon the language in the Preamble.
The Preamble intended to make clear that obstructive lung diseases (such as chronic obstructive pulmonary disease and emphysema) can fall within the legal definition of pneumoconiosis, but only if the claimant can satisfy his burden of proving that the pulmonary condition was significantly related to or substantially aggravated by coal dust exposure:
The Department attempts to clarify that not all obstructive lung disease is pneu-moconiosis. It remains the claimant’s burden of persuasion to demonstrate that his obstructive lung disease arose out of his coal mine employment and therefore falls within the statutory definition of pneumoconiosis.
65 Fed. Reg. 79920-01, 79923; see also 65 Fed. Reg. 79920-01, 79938 (“The revised definition will eliminate the need for litigation of this issue on a claim-by-claim basis, and render invalid as inconsistent with the regulations medical opinions which categorically exclude obstructive lung disorders from occupationally-related pathologies. The Department reiterates, however, that the revised definition does not alter the former regulations’ requirement that each miner bear the burden of proving that his obstructive lung disease did in fact arise out of his coal mine employment, and not from another source.” (emphasis added) (internal citation omitted)).
Consistent with the conclusion that coal dust exposure can cause obstructive lung disease, the Preamble also notes medical studies that “support the theory that dust-induced emphysema and smoke-induced emphysema occur through similar mechanisms.” id. at 79943 (emphasis added). However, while the Preamble recognizes that the mechanisms by which smoke and coal mine dust cause lung destruction are similar, it does not state that the mechanisms or “the signs and symptoms [are] identical”, J.A. 39, as Dr. Rasmussen opined, J.A. 39, or that the causes of an obstructive pulmonary disease (smoking and/or coal dust exposure and/or asthma) cannot be determined or ruled out by a qualified physician. If that were the case, no physician could ever rule out any degree of coal dust exposure as a significant contributing cause of an obstructive pul *327 monary disease, and the Preamble would effectively become an irrebuttable presumption that coal dust exposure, if it is proven, must be considered to have significantly caused or substantially aggravated the pulmonary condition because no one could rule it out. Taking the language of the Preamble at face value, it is clear to me that the opinions of Drs. Zaldivar and Hippensteel are not inconsistent with the Preamble’s findings.
This case is also distinguishable from Harman, wherein we upheld the decision of an ALJ discrediting a physician’s opinion as inconsistent with the Preamble. The physician in that case “based [his] conclusion, in part, on his opinion that legal pneumoconiosis ‘cannot’ cause obstructive pulmonary disease.” Harman Mining Co. v. Dir., OWCP, 678 F.3d 305, 311 (4th Cir.2012) (emphasis added). We also upheld the ALJ’s decision to discredit a second physician’s opinion because he “improperly believed that pneumoconiosis cannot cause disability in the absence of a positive x-ray,” another categorical rejection of the DOL’s conclusions in the Preamble. Id. at 311-12 (emphasis added) (internal quotation marks omitted). The opinions of Drs. Zaldivar and Hippensteel, in contrast, are not categorical rejections of the premise that chronic obstructive pulmonary disease can be caused or aggravated by coal dust exposure, or that pneu-moconiosis cannot exist in the absence of a positive x-ray finding.
Finally, the ALJ’s conclusion that the opinions of Drs. Zaldivar and Hippensteel should be discredited because they focused more on clinical than legal pneumoconiosis also finds no support in the record. When the evaluations were conducted by Drs. Zaldivar and Hippensteel, Dr. Rasmussen had diagnosed clinical pneumoconiosis based upon his positive x-ray reading. It is not surprising, therefore, that Drs. Zal-divar and Hippensteel might likewise be focused more on addressing the diagnosis of clinical pneumoconiosis made by their colleague at the time. Nevertheless, both physicians addressed the then-alternative claim of legal pneumoconiosis, exhibited (as the ALJ acknowledged) a correct understanding of its distinction from clinical pneumoconiosis, and explained their rationales for rejecting both forms of pneumo-coniosis.
Accordingly, because I believe the ALJ discredited the opinions of Drs. Zaldivar and Hippensteel on invalid bases, I would, at a minimum, vacate and remand the case for reconsideration in light of all of the medical evidence and pursuant to a proper interpretation of the Preamble.