**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

No. 16-1450

ELKAY MINING COMPANY,

       Petitioner,

v.

HAZEL C. SMITH, widow of Edward W. Smith; DIRECTOR, OFFICE OF WORKERS' COMPENSATION PROGRAMS, UNITED STATES DEPARTMENT OF LABOR,

       Respondents.

On Petition for Review of an Order of the Benefits Review Board.  (2015−0100 BLA)

Argued:  September 15, 2017                Decided:  November 2, 2017

Before MOTZ, TRAXLER, and KEENAN, Circuit Judges.

Petition for review denied by unpublished opinion.  Judge Keenan wrote the opinion, in which Judge Motz and Judge Traxler joined.

**ARGUED**: Jeffrey Robert Soukup, JACKSON KELLY PLLC, Lexington, Kentucky, for Petitioner.  Leonard Joseph Stayton, Inez, Kentucky; Jennifer Leigh Feldman, UNITED STATES DEPARTMENT OF LABOR, Washington, D.C., for Respondents.  **ON BRIEF:** William S. Mattingly, JACKSON KELLY PLLC, Lexington, Kentucky, for Petitioner.  M. Patricia Smith, Solicitor of Labor, Maia S. Fisher, Acting Associate Solicitor, Gary K. Stearman, Counsel for Appellate Litigation, Helen H. Cox, Office of the Solicitor, UNITED STATES DEPARTMENT OF LABOR, Washington, D.C., for Respondent

Director, Office of Workers' Compensation Programs.

Unpublished opinions are not binding precedent in this circuit.

BARBARA MILANO KEENAN, Circuit Judge:

Elkay Mining Company petitions for review of a decision awarding black lung survivorship benefits to Hazel C. Smith (Mrs. Smith), the widow of coal miner Edward W. Smith (Mr. Smith), under the Black Lung Benefits Act (the Act), 30 U.S.C. §§ 901 through 944. The Administrative Law Judge (ALJ) found that Mrs. Smith was entitled to benefits because the evidence established an irrebuttable presumption that Mr. Smith died from complicated pneumoconiosis. The Benefits Review Board affirmed the award of benefits. Upon our review, we hold that substantial evidence supports the ALJ's decision and, accordingly, we deny Elkay's petition for review.

I.

Mr. Smith worked in coal mines in West Virginia for at least 34 years, retiring in 1993. He worked as an electrician for a variety of coal mining companies, including most recently for Elkay Mining Company (Elkay). The majority of Smith's work took place underground. Mr. Smith also was a regular smoker.

Over the years, Mr. Smith developed serious medical problems, including pneumoconiosis, a disease known as "black lung," which is characterized by the presence of densities and opacities in the lungs. Smith underwent four major hospitalizations in his later years: (1) in 2006 for an angioplasty; (2) in 2008 because he was vomiting blood; (3) in March 2009, during which he was diagnosed with probable congestive heart failure; and (4) from June 22 to July 3, 2009, to evaluate the need for a left leg amputation. During the latest hospitalization, Mr. Smith's treatment was complicated by the onset of pulmonary

3

edema.[1]  The hospital discharged him on July 3, 2009, and he died later that month.

Mr. Smith's death certificate listed congestive heart failure, hypertension, and coronary artery disease as the primary causes of death.  The death certificate also referenced contributory conditions of emphysema and chronic obstructive pulmonary disease, which at least one medical expert associated with pneumoconiosis.  Additionally, in Mr. Smith's various medical treatment records, doctors frequently noted a history of coal workers' pneumoconiosis, and the admission record for Mr. Smith's final hospitalization contained a notation that his medical history was "[v]ery much significant for . . . coal miner's pneumoconiosis."

Mrs. Smith filed an application for survivorship benefits under the Act in January 2011.  During the course of this litigation, two radiologists provided conflicting readings of a digital x-ray of Mr. Smith's chest taken on June 24, 2009 (the 2009 x-ray), shortly before Mr. Smith died.  Those two readings were the only x-ray readings submitted by the parties into the record for the express purpose of assessing whether Mr. Smith had pneumoconiosis.

In the first reading, Dr. Thomas E. Miller concluded that the 2009 x-ray was positive for "complicated pneumoconiosis."  Complicated pneumoconiosis typically develops after simple pneumoconiosis, and is characterized by larger lung lesions and more serious

---

[1] Pulmonary edema is the buildup of fluid in the lungs that may cause difficulty breathing.  *See* "Edema, pulmonary e.," *Dorland's Illustrated Medical Dictionary* (32d ed. 2012).

respiratory problems.[2] *See Usery v. Turner Elkhorn Mining Co.*, 428 U.S. 1, 7 (1976); Allen R. Prunty & Mark E. Solomons, *The Federal Black Lung Program: Its Evolution and Current Issues*, 91 W. Va. L. Rev. 665, 673 n.22 (1989). In his reading of the 2009 x-ray, Dr. Miller also noted large opacities with a combined size of less than five centimeters, which were consistent with a finding of complicated pneumoconiosis.

Reaching a contrary conclusion, Dr. William W. Scott, Jr. did not find any abnormalities consistent with pneumoconiosis in the 2009 x-ray, but noted that there was evidence suggesting congestive heart failure and pulmonary edema. Dr. Scott further opined that "[i]n the presence of this much [congestive heart failure,] one could not see small opacities even if they were present."

Mr. Smith's treatment records contained additional x-ray readings. Although some of those readings did not include any findings relevant to pneumoconiosis, others included observations consistent with a finding of pneumoconiosis. One record, dated September 22, 2006 (the 2006 reading), contained a notation of markings in the lungs "possibly related to [Mr. Smith's] history of coal mining," and a 1.1 centimeter "nodule" in the left lung. A second record, dated June 5, 2008 (the 2008 reading),[3] contained an observation of densities throughout both lungs, and a diagnosis of "[p]robable occupational

---

[2] We refer to the condition giving rise to the irrebuttable presumption as "complicated pneumoconiosis," also known as "progressive massive fibrosis," although neither the Act nor the regulations include the term "complicated pneumoconiosis." *See E. Associated Coal Corp. v. Dir., Office of Workers' Comp. Programs* (*Scarbro*), 220 F.3d 250, 255 (4th Cir. 2000); *Usery v. Turner Elkhorn Mining Co.*, 428 U.S. 1, 7 (1976).

[3] Because the record is unclear regarding the names of the doctors who provided the 2006 and 2008 readings, we refer to these readings by year.

pneumoconiosis." Some additional x-ray readings from 2008 and 2009 contained findings of opacities and densities consistent with pneumoconiosis, while other x-ray readings included notations associating the opacities with pulmonary edema or other conditions unrelated to pneumoconiosis.

In addition to the various x-ray readings, two physicians provided medical opinions for Elkay evaluating whether Mr. Smith had complicated pneumoconiosis. Dr. James R. Castle reviewed and summarized certain medical evidence in the record but, notably, did not consider the 2009 x-ray or the readings of that x-ray by Dr. Miller and Dr. Scott. Dr. Castle concluded that Mr. Smith "did not have evidence of complicated coal workers' pneumoconiosis."

Dr. Stephen G. Basheda also reviewed the medical evidence at Elkay's request, again omitting any review of the 2009 x-ray or the related readings by Dr. Miller and Dr. Scott. Dr. Basheda opined that there were multiple possible explanations for Mr. Smith's pulmonary complications, and ultimately concluded that he could "make no comment" regarding the role of pneumoconiosis in Mr. Smith's death because "[t]here is no evidence to validate [this] diagnos[is]."

After a hearing, the ALJ made two findings relevant to our analysis. First, the ALJ credited Dr. Miller's reading of the 2009 x-ray as positive for complicated pneumoconiosis over Dr. Scott's different view of the same x-ray. The ALJ found that the 2006 and 2008 x-ray readings corroborated Dr. Miller's findings. The ALJ did not otherwise remark on the x-ray readings in Mr. Smith's treatment records that lacked any explicit reference to pneumoconiosis.

6

Second, the ALJ discounted the medical opinions offered by Dr. Castle and Dr. Basheda that did not find complicated pneumoconiosis. The ALJ gave Dr. Castle's opinion "little weight," because Dr. Castle did not review the 2009 x-ray or the readings of that x-ray by Dr. Miller and Dr. Scott. The ALJ also discounted Dr. Basheda's opinion, largely on the same basis.

The ALJ concluded that Mrs. Smith had presented sufficient evidence, under prong (c) of 20 C.F.R. § 718.304, to invoke the irrebuttable presumption that Mr. Smith's death was due to complicated pneumoconiosis. Consequently, the ALJ concluded that Mrs. Smith had established that she was entitled to survivorship benefits under 20 C.F.R. § 718.205(a). The Benefits Review Board affirmed the ALJ's decision, and Elkay filed this petition for review.

## II.

### A.

We begin with an overview of the statutory and regulatory scheme governing claims for survivorship benefits under the Act. In 1969, Congress established the Act to provide benefits to coal miners totally disabled by pneumoconiosis or to the surviving spouse of a coal miner who died due to pneumoconiosis. 30 U.S.C. § 901(a); *W. Va. CWP Fund v. Bender*, 782 F.3d 129, 133 (4th Cir. 2015). The Act defines pneumoconiosis as "a chronic dust disease of the lung and its sequelae, including respiratory and pulmonary impairments,

7

arising out of coal mine employment."[4]   30 U.S.C. § 902(b); 20 C.F.R. § 718.201.

Pneumoconiosis is classified as either "simple" or "complicated."   As noted above, complicated pneumoconiosis usually develops after simple pneumoconiosis and involves the presence of larger lung lesions and more serious respiratory problems.  *See Usery*, 428 U.S. at 7; Prunty & Solomons, *supra*, at 673 n.22 ("Complicated pneumoconiosis (progressive massive fibrosis) . . . usually occurs on a background of simple pneumoconiosis.").

Under the Act's implementing regulations, a surviving spouse of a deceased coal miner is entitled to benefits if the survivor proves that: (1) the miner had pneumoconiosis; (2) the pneumoconiosis arose out of coal mine employment; and (3) the miner's death was due to pneumoconiosis.  20 C.F.R. § 718.205(a).  A claimant can establish both the first and the third prongs by invoking an irrebuttable statutory presumption of complicated pneumoconiosis under 20 C.F.R. § 718.304.  *See Westmoreland Coal Co. v. Cox*, 602 F.3d 276, 282 (4th Cir. 2010).  To trigger the irrebuttable presumption, a claimant must produce (a) a chest x-ray showing one or more large opacities in the lungs greater than one centimeter in diameter, (b) a biopsy or autopsy showing massive lung lesions, or (c) a

_____

[4] The regulations define "pneumoconiosis" as including both "clinical" pneumoconiosis and "statutory" or "legal" pneumoconiosis.  20 C.F.R. § 718.201(a). Consequently, a miner suffers from pneumoconiosis under the Act if he either has received a clinical diagnosis of coal workers' pneumoconiosis or has "any chronic restrictive or obstructive pulmonary disease arising out of coal mine employment."  *Id.* § 718.201(a)(2).

8

diagnosis by "other means" showing a condition that reasonably would be expected to yield the results required under (a) or (b). 20 C.F.R. § 718.304; 30 U.S.C. § 921(c)(3).[5]

Although an ALJ may make a finding of complicated pneumoconiosis under any of these three prongs, he must review all the relevant evidence together in rendering a determination. *See* 30 U.S.C. § 923(b) ("In determining the validity of claims under this part, all relevant evidence shall be considered."). The three diagnostic methods are intended to identify not three disparate conditions but rather the single underlying condition of complicated pneumoconiosis. *See E. Associated Coal Corp. v. Dir., Office of Workers' Comp. Programs* (*Scarbro*), 220 F.3d 250, 255 (4th Cir. 2000); *Double B Mining, Inc. v. Blankenship*, 177 F.3d 240, 243 (4th Cir. 1999) (noting that ALJ "must perform equivalency determinations to make certain that regardless of which diagnostic technique is used, the same underlying condition triggers the irrebuttable presumption"). Importantly, "[b]ecause prong (A) sets out an entirely objective scientific standard—i.e. an opacity on an x-ray greater than one centimeter—x-ray evidence provides the benchmark for determining what under . . . prong (C) is an equivalent diagnostic result reached by other means." *Scarbro*, 220 F.3d at 256 (quotation marks and citation omitted).

Due to an idiosyncrasy of the regulations, until May 19, 2014, a claimant could not prove the existence of complicated pneumoconiosis under prong (a) using a digital x-ray

---

[5] The implementing regulation provides for the irrebuttable presumption using language that is substantively equivalent to the statutory language. *Compare* 20 C.F.R. § 718.304, *with* 30 U.S.C. § 921(c)(3).

reading.[6]  *See* 20 C.F.R. § 718.102 (2013) (referring only to x-rays produced on "film").

Although digital x-ray readings completed before May 19, 2014 cannot establish complicated pneumoconiosis under prong (a), a claimant still may establish complicated pneumoconiosis by "other means" under prong (c).  20 C.F.R. § 718.304.  Such "other means" include digital x-rays taken before May 19, 2014, which can establish complicated pneumoconiosis under prong (c) even when those x-rays do not fulfill the technical requirements of prong (a).  *See Scarbro*, 220 F.3d at 256 ("[E]ven where some x-ray evidence . . . would satisfy the requirements of prong (A), if other x-ray evidence is available . . . then all of the evidence must be considered and evaluated."); 20 C.F.R. § 718.107 (providing that the results of "any medically acceptable test or procedure reported by a physician" may be submitted in support of a claim).

B.

In the context of this statutory and regulatory framework, we turn to address Elkay's arguments on appeal.  First, Elkay contends that the ALJ erred in crediting Dr. Miller's reading of the 2009 x-ray over Dr. Scott's reading.  In particular, Elkay argues that the ALJ relied on an impermissibly selective review of Mr. Smith's treatment records, and neglected to consider x-ray readings that were not positive for pneumoconiosis.  Second, Elkay argues that the ALJ erred in discounting Elkay's two expert medical opinions, and

---

[6] This state of affairs arose because prong (a) requires that x-ray evidence meet the quality standards for x-rays set forth under 20 C.F.R. § 718.102.  *Compare* 20 C.F.R. § 718.304(a), *with* 20 C.F.R. § 718.202(a)(1).  Formerly, 20 C.F.R. § 718.102 set forth classification and quality standards only for *analog* x-rays.  *See* 20 C.F.R. § 718.102 (2013).  Beginning May 19, 2014, the new regulation permits claimants to produce chest x-ray evidence "by either film or digital radiography systems."  20 C.F.R. § 718.102(b).

failed to explain sufficiently the bases for his assessment of those opinions. We disagree with Elkay's arguments.

We review *de novo* the legal conclusions of the ALJ and the Board, and we defer to an ALJ's decision to award benefits under the Act if the decision is supported by substantial evidence. *Bender*, 782 F.3d at 144. "Substantial evidence is more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Sea "B" Mining Co. v. Addison*, 831 F.3d 244, 252 (4th Cir. 2016) (quotation marks and citation omitted). Factual findings, credibility determinations, and the proper weighing of medical opinions are the province of the ALJ. *Hobet Mining, LLC v. Epling*, 783 F.3d 498, 504 (4th Cir. 2015).

An ALJ must account for relevant evidence and set forth reasons for according particular weight to significant pieces of evidence, "adequately explain[ing] why he credited certain evidence and discredited other evidence." *Addison*, 831 F.3d at 252–53. However, these principles do not require an ALJ to set forth and explain an exhaustive ledger of evidence, or to opine on the relative importance of even ambivalent or inconclusive evidence. *See Lane Hollow Coal Co. v. Dir., Office of Workers' Comp. Programs*, 137 F.3d 799, 803 (4th Cir. 1998) (observing that "[a]n adequate explanation can be a succinct one" and that ALJs are not burdened with "a duty of long-windedness"); *Piney Mountain Coal Co. v. Mays*, 176 F.3d 753, 762 n.10 (4th Cir. 1999) (noting that ALJ's duty of explanation is not a "mandate for administrative verbosity or pedantry"). An explanation of the reasoning supporting the ALJ's conclusions is sufficient. *Mingo Logan*

11

*Coal Co. v. Owens*, 724 F.3d 550, 557 (4th Cir. 2013) (noting that the appropriate inquiry is "whether the ALJ has sufficiently explained his rationale in crediting certain evidence").

i.

We first consider whether the ALJ adequately accounted for his decision to credit Dr. Miller's positive reading of the 2009 x-ray over Dr. Scott's reading. The ALJ found that Dr. Miller's reading established the presence of complicated pneumoconiosis by "other means" under 20 C.F.R. § 718.304(c). As noted above, Dr. Miller expressly and unequivocally found the existence of complicated pneumoconiosis. He observed several large opacities with a combined size of less than five centimeters. In contrast, Dr. Scott did not find evidence compatible with pneumoconiosis, but found pulmonary congestion compatible with congestive heart failure and remarked that "[i]n the presence of this much [congestive heart failure,] one could not see small opacities even if they were present."

In crediting Dr. Miller's reading over Dr. Scott's, the ALJ explained that Dr. Miller's reading was "supported by medical treatment records which suggest complicated pneumoconiosis." In particular, the ALJ observed that the 2006 reading corroborated Dr. Miller's conclusion, because the 2006 reading "note[d] a 1.1 centimeter nodule within the left upper lobe." Evidence of a 1.1 centimeter nodule is persuasive because a nodule of that size exceeds the one centimeter threshold for establishing complicated pneumoconiosis by chest x-ray under prong (a) of 20 C.F.R. § 718.304. Further, the ALJ relied on the separate 2008 reading, which found two new "densities" in the chest compared to the 2006 reading and noted "[p]robable occupational pneumoconiosis." The ALJ

12

remarked that these records were consistent with Dr. Miller's finding years later of large opacities in the total amount of almost five centimeters.

The ALJ correctly noted that pneumoconiosis is "progressive and irreversible," meaning that simple pneumoconiosis may progress over time to yield the larger opacities required to show complicated pneumoconiosis. Indeed, the Act's implementing regulations presume that pneumoconiosis is "a latent and progressive disease." *See* 20 C.F.R. § 718.201(c). The 2006 and 2008 readings corroborated the presence of pneumoconiosis, which Dr. Miller found had become complicated pneumoconiosis by June 24, 2009, the date of the 2009 x-ray. And, as detailed above, the 2006 reading provided support for a finding of complicated pneumoconiosis three years before the 2009 x-ray, because of the presence of an opacity measuring more than one centimeter in diameter. *See* 20 C.F.R. 718.304(a).

Notably, Dr. Miller's finding of complicated pneumoconiosis was unequivocal, while Dr. Scott's reading was ambivalent and concluded that in the presence of congestive heart failure, "one could not see small opacities even if they were present." We hold that the ALJ's decision to credit Dr. Miller's reading over Dr. Scott's reading was reasonable, in view of the corroborating treatment records, the progressive nature of pneumoconiosis, and the ambivalent nature of Dr. Scott's opinion. Consequently, substantial evidence supported the ALJ's determination that Mr. Smith's condition had progressed to complicated pneumoconiosis by the time of his death in July 2009.

Our conclusion is not altered by Elkay's contention that the ALJ failed to give adequate consideration to the other x-ray readings in Mr. Smith's treatment records. An

13

ALJ is not required to elaborate exhaustively on every element of evidence in the record, particularly if that evidence is inconclusive. *See Lane Hollow*, 137 F.3d at 803 (an "adequate explanation" by an ALJ "can be succinct"). The ALJ explained that he reviewed Mr. Smith's treatment records, and discussed some of those records in detail.[7] Further, while the x-ray readings in Mr. Smith's treatment records did not include specific findings of complicated pneumoconiosis, these readings also did not rule out its existence. And, in fact, many of the x-ray readings included findings of opacities and densities that would have been consistent with a diagnosis of pneumoconiosis. Thus, we hold that the ALJ did not fail to elaborate on important, probative evidence and did not err in crediting Dr. Miller's reading of the 2009 x-ray over Dr. Scott's reading.

ii.

We next consider Elkay's contention that the ALJ erred in discounting the medical opinions of Dr. Castle and Dr. Basheda. Generally, we defer to an ALJ's conclusions regarding the proper weight to be accorded to expert medical opinions. *Harman Mining Co. v. Dir., Office of Workers' Comp. Programs*, 678 F.3d 305, 310 (4th Cir. 2012). Although a medical opinion need not rely on chest x-ray evidence, *see* 20 C.F.R. 718.202(a)(4), an ALJ is entitled to accord "little weight" to a physician's opinion if the physician did not review chest x-ray evidence that the ALJ found to be probative. *See Harman*, 678 F.3d at 312 (noting that ALJ entitled to accord "little weight" to a medical

---

[7] At oral argument, counsel for Elkay appeared to contend that while the ALJ reviewed the treatment records in his discussion of the facts, he should have elaborated on those records in the analysis section of his opinion. However, the law does not require an ALJ to discuss particular evidence at specific points in his opinion.

opinion that did not review the most recent positive x-ray reading).  A medical opinion that does not consider probative, objective evidence indicating a contrary conclusion may be viewed as less persuasive.  *See Island Creek Coal Co. v. Compton*, 211 F.3d 203, 212 (4th Cir. 2000).

In the present case, the ALJ gave "little weight" to Dr. Castle's opinion because Dr. Castle did not consider the 2009 x-ray or the readings of that x-ray made by Dr. Miller and Dr. Scott.  Dr. Castle concluded that Mr. Smith "did not have evidence" of complicated pneumoconiosis, but did not review Dr. Miller's contrary, unequivocal finding of that disease.  We therefore conclude that the ALJ was entitled to discount Dr. Castle's opinion for its failure to review highly probative evidence.  *See Harman*, 678 F.3d at 312.  The ALJ likewise noted that Dr. Basheda did not review the 2009 x-ray, or the readings made by Dr. Miller and Dr. Scott interpreting that x-ray, and was entitled to accord little weight to Dr. Basheda's opinion on that basis.  *Id.*

### III.

For these reasons, we conclude that the ALJ's decision was supported by substantial evidence.  We therefore deny Elkay's petition for review.

*PETITION FOR REVIEW DENIED*

15