# UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

WESTMORELAND COAL COMPANY,
INCORPORATED,

*Petitioner,*

v.

MAE ANN SHARPE, on behalf of
and as widow of William A.
Sharpe; DIRECTOR, OFFICE OF
WORKERS' COMPENSATION
PROGRAMS, UNITED STATES
DEPARTMENT OF LABOR,

*Respondents.*

No. 10-2327

On Petition for Review of an Order
of the Benefits Review Board. (08-0563-BLA)

Argued: January 25, 2012

Decided: August 20, 2012

Before TRAXLER, Chief Judge, and KING and AGEE,
Circuit Judges.

Petition for review denied by published opinion. Judge King
wrote the majority opinion, in which Chief Judge Traxler
joined. Judge Agee wrote a dissenting opinion.

**COUNSEL**

**ARGUED:** William Steele Mattingly, JACKSON KELLY, PLLC, Morgantown, West Virginia, for Petitioner. Rita Ann Roppolo, UNITED STATES DEPARTMENT OF LABOR, Washington, D.C.; John A. Bednarz, Jr., Wilkes-Barre, Pennsylvania, for Respondents. **ON BRIEF:** M. Patricia Smith, Solicitor of Labor, Rae Ellen James, Associate Solicitor, Sean G. Bajkowski, Counsel for Appellate Litigation, Barry H. Joyner, UNITED STATES DEPARTMENT OF LABOR, Washington, D.C., for Federal Respondent.

---

**OPINION**

KING, Circuit Judge:

As recounted in our prior opinion in these Black Lung Benefits Act proceedings, *see Sharpe v. Dir., OWCP*, 495 F.3d 125 (4th Cir. 2007) ("*Sharpe I*"), coal miner William A. Sharpe was awarded total disability benefits in 1993, and received those benefits until he died in 2000. A week after Mr. Sharpe's death, his widow, Mae Ann Sharpe, made a claim for survivor's benefits. Within two months of Mrs. Sharpe's claim being filed — and nearly seven years after Mr. Sharpe's living miner's claim was approved — liable employer Westmoreland Coal Company filed a modification request, by which it sought reconsideration of Mr. Sharpe's 1993 award of benefits (the "Modification Request"). In 2004, an administrative law judge ("ALJ") agreed to modify the 1993 award, retroactively denying Mr. Sharpe's living miner's claim and, thus, also rejecting Mrs. Sharpe's survivor's claim. Then, in 2005, the Benefits Review Board (the "BRB") affirmed the ALJ's decision. On Mrs. Sharpe's petition for review, however, we vacated and remanded for further proceedings, explaining that the ALJ had failed to exercise the discretion accorded to him with respect to the Modification Request. *See Sharpe I*, 495 F.3d at 128.

On remand, the ALJ again denied Mr. Sharpe's living miner's claim and Mrs. Sharpe's survivor's claim, but the BRB reversed. Accordingly, this matter is now before us on Westmoreland's petition for review, with Mrs. Sharpe and the Director of the Office of Workers' Compensation Programs being the designated respondents. As explained below, we deny Westmoreland's petition for review and thereby affirm the BRB's decision in Mrs. Sharpe's favor.

I.

A.

The early history of the Sharpes' claims was outlined in our *Sharpe I* opinion. *See* 495 F.3d at 128-30. William Sharpe worked for thirty-nine years in the coal mines of southern West Virginia and western Virginia, and was employed by Westmoreland Coal Company for at least eight of those years. Mr. Sharpe last worked for Westmoreland as a manager in and around underground coal mines, and he retired in 1988. Mr. Sharpe had previously worked in various mining operations as a general superintendent, a foreman, a section foreman, a rock driller, and a coal loader. In March 1989, Mr. Sharpe filed his claim for benefits, maintaining that he suffered from black lung disease, or pneumoconiosis. *See* 30 U.S.C. § 922(a)(1) (providing that, "[i]n the case of total disability of a miner due to pneumoconiosis, the disabled miner shall be paid benefits"). An ALJ denied Mr. Sharpe's living miner's claim in 1991, but the BRB subsequently vacated the ALJ's finding that Mr. Sharpe did not suffer from complicated pneumoconiosis. *See, e.g.*, *Westmoreland Coal Co. v. Cox*, 602 F.3d 276, 282 (4th Cir. 2010) (recognizing that condition described in 30 U.S.C. § 921(c)(3) is known as statutory "complicated pneumoconiosis" and entitles claimant to irrebuttable presumption of total disability). The living miner's claim was then remanded to a different ALJ, who, by decision of August 26, 1993 (the "1993 ALJ Decision"), found that Mr. Sharpe suffered from complicated pneumoco-

niosis and awarded him benefits retroactive to the initial filing of his living miner's claim in 1989.

Westmoreland appealed the 1993 ALJ Decision to the BRB, which affirmed the benefits award on September 28, 1994. Significantly, Westmoreland failed to pursue its statutory right to seek judicial review of the BRB's affirmance of the 1993 ALJ Decision. *See* 33 U.S.C. § 921(c) (allowing that "[a]ny person adversely affected or aggrieved by a final order of the Board may obtain a review of that order in the United States court of appeals for the circuit in which the injury occurred").[1] Mr. Sharpe thus received total disability benefits from 1989 until his death on April 18, 2000.

After her husband died, Mae Ann Sharpe promptly filed, on April 26, 2000, her claim for survivor's benefits. *See* 30 U.S.C. § 922(a)(2) (providing that, "[i]n the case of death of a miner due to pneumoconiosis . . . , benefits shall be paid to his widow (if any) at the rate the deceased miner would receive such benefits if he were totally disabled").[2] On June 15, 2000, Westmoreland filed its Modification Request, for

---

[1]Section 921 of Title 33 is a provision of the Longshore and Harbor Workers' Compensation Act incorporated into the Black Lung Benefits Act by 30 U.S.C. § 932(a). Another such provision, 33 U.S.C. § 922, authorizes modification of benefits awards and is discussed *infra*.

[2]Notably, because the Sharpes' claims were filed in 1989 and 2000, they are not affected by the Patient Protection and Affordable Care Act's recent amendments to the Black Lung Benefits Act, which apply only to claims filed after January 1, 2005. *See* Patient Protection and Affordable Care Act, Pub. L. No. 111-148, § 1556, 124 Stat. 119, 260 (2010). As amended, the Black Lung Benefits Act now provides that "[i]n no case shall the eligible survivors of a miner who was determined to be eligible to receive benefits under this title at the time of his or her death be required to file a new claim for benefits, or refile or otherwise revalidate the claim of such miner." 30 U.S.C. § 932(l); *see W. Va. CWP Fund v. Stacy*, 671 F.3d 378, 381 (4th Cir. 2011) (recognizing that, under amended § 932(l), "an eligible survivor of a miner who was receiving benefits at the time of his death is automatically entitled to survivors' benefits without having to establish that the miner's death was due to pneumoconiosis").

the purpose of upsetting the 1993 award of benefits on Mr. Sharpe's living miner's claim. *See* 33 U.S.C. § 922 (authorizing modification of a benefits award on grounds including "a mistake in a determination of fact"); 20 C.F.R. § 725.310 (implementing 33 U.S.C. § 922 with respect to black lung benefits).[3] According to Westmoreland, the 1993 ALJ Decision was premised on a mistake of fact, in that Mr. Sharpe had never suffered from complicated pneumoconiosis. On July 23, 2002, an ALJ denied the Modification Request and awarded benefits to Mrs. Sharpe on her survivor's claim. Westmoreland appealed to the BRB, which, on August 22, 2003, vacated and remanded for further proceedings.

Thereafter, by decision of April 30, 2004 (the "2004 ALJ Decision"), the ALJ reversed himself and concluded that a mistake of fact had been made in the 1993 ALJ Decision's finding that Mr. Sharpe suffered from complicated pneumoconiosis. On that basis, the ALJ modified the 1993 ALJ Decision by retroactively denying Mr. Sharpe's living miner's claim, and consequently also denied Mrs. Sharpe's survivor's claim. The BRB affirmed the 2004 ALJ Decision by its decision of June 13, 2005 (the "2005 BRB Decision"), likewise assuming that Westmoreland had a right to modification of the 1993 award upon simply establishing a mistake of fact.

B.

The *Sharpe I* proceedings arose from Mrs. Sharpe's petition for review of the 2005 BRB Decision, in which she contended, inter alia, that the BRB had erroneously affirmed the 2004 ALJ Decision's modification of the 1993 ALJ Decision. We, of course, agreed with Mrs. Sharpe. That is, we recognized that "the modification of a black lung award or denial does not automatically flow from a mistake in an earlier deter-

---

[3]The provisions discussed herein of Parts 718 and 725 of Title 20 of the Code of Federal Regulations were in effect until January 2001, unless otherwise noted.

mination of fact." *Sharpe I*, 495 F.3d at 132. Rather, the adjudicator "'*may, if he so chooses*, modify the final order on the claim' upon finding [a] mistake of fact." *Id.* at 131 (quoting *Jessee v. Dir., OWCP*, 5 F.3d 723, 725 (4th Cir. 1993)). In exercising that discretion, "modification should be made only where doing so will 'render justice under the act.'" *Id.* at 132 (quoting *Banks v. Chi. Grain Trimmers Ass'n*, 390 U.S. 459, 464 (1968)); *see also Betty B Coal Co. v. Dir., OWCP*, 194 F.3d 491, 501 (4th Cir. 1999) ("[W]e have no quarrel with encouraging ALJs to exercise their discretion to reopen when doing this would promote justice (and we would not hesitate to correct abuses of that discretion) . . . ."). Applying those principles to the rulings on Westmoreland's request to modify the 1993 award of living miner's benefits to Mr. Sharpe, we explained that

> none of the administrative decisions rendered in connection with the Modification Request assessed all the factors relevant to an exercise of sound discretion. Instead, they addressed only one — whether a mistake of fact had been made in the 1993 ALJ Decision. Because the 2004 ALJ Decision (affirmed by the 2005 BRB Decision) found that a mistake of fact had been made, the adjudicators were obliged to exercise their sound discretion, pursuant to [20 C.F.R. § 725.310(a)], by evaluating the Modification Request in light of whether reopening the case would render justice under the [Black Lung Benefits Act].

*Sharpe I*, 495 F.3d at 132; *see also id.* at 134 (concluding that the ALJ's and the BRB's "misapprehension of the applicable legal standard is, by definition, an abuse of discretion").

In remanding this matter, we instructed that "a proper exercise of discretion should lead the adjudicators to assess, in addition to the need for accuracy, the diligence and motive of Westmoreland in seeking modification . . . , the possible futility of . . . modification, and other factors that may bear on

whether [modification] will 'render justice under the Act.'" *Sharpe I*, 495 F.3d at 134; *see also id.* at 133 n.15 (observing that "finality interests may sometimes be relevant to a proper modification request ruling," though "'the "principle of finality" just does not apply to . . . black lung claims as it does in ordinary lawsuits'" (quoting *Jessee*, 5 F.3d at 725)). For further guidance, we provided the following examples of potentially "significant factual issues":

- Why did Westmoreland wait to seek modification under § 725.310(a) until June 2000, two months after Mr. Sharpe's death, and nearly seven years after the BRB had affirmed his living miner's award (a decision that Westmoreland never appealed)?

- Should Westmoreland's motive in seeking modification be deemed suspect?

- Was the Modification Request part and parcel of Westmoreland's defense to Mrs. Sharpe's claim for survivor's benefits, which had been filed less than two months earlier?

- Is the Modification Request futile or moot, in that no overpayments made to Mr. Sharpe could be recovered?

- Is the Modification Request akin to a request for an advisory opinion, in that a favorable resolution thereof will have no impact on the living miner's claim?

*Id.* at 133. Relevant to those issues, we observed that "Westmoreland is unable to seek recovery from Mrs. Sharpe for any overpayments made under Mr. Sharpe's living miner's claim," and that the company "is only entitled to seek recovery of [any such] overpayments . . . from Mr. Sharpe's

estate." *Id.* at 132 (citing 20 C.F.R. § 725.540(d)).[4] We also acknowledged that, if Westmoreland were to "make a compelling showing that [the issues] should be resolved in its favor[,] such a showing would be entitled to appropriate consideration by the adjudicators." *Id.* at 133.[5]

## C.

### 1.

On remand, the ALJ conducted a January 9, 2008 hearing, during which Mrs. Sharpe testified and Mr. Sharpe's "Last Will and Testament" was entered into the record. Premised on that evidence, the ALJ found in his subsequent decision of March 24, 2008 (the "2008 ALJ Decision"), that "[Mr. Sharpe's] estate has no assets from which Westmoreland can recoup its payments" on the 1993 living miner's benefits award. *See* 2008 ALJ Decision 8 & n.8 (explaining that the Sharpes had jointly owned all their property, that Mrs. Sharpe was the sole beneficiary of her husband's life insurance policy, and that, although Mr. Sharpe willed his possessions to his wife, "there was nothing in the estate to pass to her through his will").

---

[4]Under the applicable regulations, "[i]n the case of an award which is decreased, any payment made in excess of the decreased rate shall be subject to collection or offset." 20 C.F.R. § 725.310(d). The current version of that provision, however, precludes recovery of payments made on later-terminated awards.

[5]Because our *Sharpe I* opinion remanded with directions to apply the proper legal standard, we were not required to reach Mrs. Sharpe's other contentions of error, including that the 2004 ALJ Decision incorrectly determined that the 1993 ALJ Decision was premised on a mistake of fact. *See Sharpe I*, 495 F.3d at 134 n.16. Nonetheless, we instructed that, on remand, the ALJ should examine the initial finding of complicated pneumoconiosis without engaging in improper "head counting" of expert medical opinions (as he may have done in the 2004 ALJ Decision), and should also more thoroughly explain why he credited an expert opinion in 2004 that he had accorded no weight in 2002. *Id.*

Even so, the ALJ determined that Westmoreland's Modification Request was not futile, because reconsideration of the 1993 finding that Mr. Sharpe suffered from complicated pneumoconiosis "might be the only way in which Westmoreland could protect itself from an automatic award of benefits on [Mrs. Sharpe's] survivor's claim." 2008 ALJ Decision 10. The ALJ cited the "irrebuttable presumption . . . that a miner's death was due to pneumoconiosis" that attaches to a finding of complicated pneumoconiosis, *see* 20 C.F.R. § 718.304, as well as the possibility that Mrs. Sharpe could employ the doctrine of "offensive nonmutual collateral estoppel" to foreclose relitigation of Mr. Sharpe's diagnosis, *see Collins v. Pond Creek Mining Co.*, 468 F.3d 213 (4th Cir. 2006) (according preclusive effect in survivor's claim to earlier finding of "simple pneumoconiosis" in living miner's claim). In the ALJ's view, there was "no question that preclusion of the operation of nonmutual offensive collateral estoppel by modification of [Mr. Sharpe's living] miner's award belies any contention that modification would be 'futile' to Westmoreland." 2008 ALJ Decision 10. The ALJ emphasized that, even though our *Collins* opinion post-dated the Modification Request, Westmoreland was "wise" to anticipate a *Collins*-type "collateral estoppel application." *Id.* Summarizing his futility ruling, the ALJ declared that "an employer's objective to thwart a survivor's claim (or a potential survivor's claim) is sufficient basis for finding that modification of a miner's claim is not a futile act, regardless of whether the employer could recoup the payment of benefits it made to the miner." *Id.* at 11.

On the question of diligence, the ALJ observed that only Westmoreland, and not Mr. or Mrs. Sharpe, was prejudiced or harmed by any lack of diligence on Westmoreland's part, in that "Westmoreland paid [Mr. Sharpe] Black Lung benefits each month for seven years (which also benefited [Mrs. Sharpe])." 2008 ALJ Decision 8. Additionally, the ALJ credited Westmoreland's assertion that its Modification Request was premised on new evidence uncovered during "discovery efforts that were prompted by the filing of the survivor's

claim." *Id.* at 9 n.9. In any event, the ALJ deemed it "immaterial whether or not Westmoreland could have discovered the new evidence prior to the miner's death," in that "'a modification request cannot be denied out of hand . . . on the basis that the evidence may have been available at an earlier stage in the proceeding.'" *Id.* (emphasis omitted) (quoting *Old Ben Coal Co. v. Dir., OWCP*, 292 F.3d 533, 546 (7th Cir. 2002)).

Addressing Westmoreland's motive for the Modification Request, the ALJ found that the company "simply used the available legal means to attempt to protect and obtain justice for itself." 2008 ALJ Decision 10. "In short," the ALJ concluded, "where a party's action is not prohibited by law it should not be precluded simply because the party is motivated by self-interest." *Id.*

The ALJ's analysis pivoted on his belief that diligence, motive, futility, and other "justice under the act" factors are to be considered only as a potential "bar" to modification, and that "modification should be barred only where the party seeking it has engaged in . . . 'bad conduct.'" 2008 ALJ Decision 7. The ALJ specified two "type[s] of 'bad conduct' that should disqualify an applicant from seeking modification" — "refusal to participate in the prior administrative proceedings" and "attempting to overcome earlier litigation mistakes by 'retrying' the case" — then found "that neither of these two disqualifying circumstances is present in the instant case." *Id.* (citing *McCord v. Cephas*, 532 F.2d 1377 (D.C. Cir. 1976); *Kinlaw v. Stevens Shipping & Terminal Co.*, 33 Ben. Rev. Bd. Serv. (MB) 68 (1999), *aff'd*, 238 F.3d 414 (4th Cir. 2000) (unpublished table decision)); *see also id.* at 11 n.16 (acknowledging "several additional circumstances which might disqualify a party from seeking modification," including serial modification requests submitted with no new evidence, and a modification request made without new evidence and after a long and unexplained delay).

Absent what he characterized as disqualifying "bad conduct," the ALJ considered himself constrained to grant Westmoreland's Modification Request if a mistake of fact was previously made. In the ALJ's words, "if the award of benefits was made erroneously, on what theory of 'justice' should that award be permitted to stand? Indeed, to uphold the award, in the face of an erroneous finding that the miner had complicated pneumoconiosis, could result in the unjust enrichment of the miner's wife." 2008 ALJ Decision 9. Thus turning to the accuracy of the 1993 ALJ Decision, the ALJ stood by his determination in the 2004 ALJ Decision that the evidence established only simple, rather than complicated, pneumoconiosis, and further failed to show that Mr. Sharpe was totally disabled by a respiratory or pulmonary impairment. *See id.* at 12-18. The ALJ therefore retroactively denied Mr. Sharpe's living miner's claim, and also denied Mrs. Sharpe's survivor's claim. *Id.* at 18.[6]

2.

In reversing the 2008 ALJ Decision by its decision of June 17, 2009 (the "2009 BRB Decision"), the BRB was mindful of its deferential scope of review, carefully explaining: "If the administrative law judge's findings of fact and conclusions of law are supported by substantial evidence, are rational, and are consistent with applicable law, they are binding upon this

---

[6]Having rejected Mr. Sharpe's living miner's claim, the ALJ recognized that he had no cause to decide whether Mrs. Sharpe could rely on offensive nonmutual collateral estoppel in support of her survivor's claim. *See* 2008 ALJ Decision 18. Nevertheless, the ALJ expounded on why he believed that such doctrine, as used by the widow in *Collins* to prove simple pneumoconiosis, should not be available for proof of complicated pneumoconiosis. *Id.* at 11 n.15 (explaining, inter alia, that while the *Collins* claimant was yet required to "'establish[ ] that [simple] pneumoconiosis hastened her husband's death,'" "nonmutual offensive collateral estoppel would serve to *automatically* establish that [complicated] pneumoconiosis was a substantial cause of the miner's death by operation of the irrebutable [sic] presumption in § 718.304" (quoting *Collins*, 468 F.3d at 222)).

Board and may not be disturbed." *See* 2009 BRB Decision 2 (citing 33 U.S.C. § 921(b)(3)). The 2008 ALJ Decision's "justice under the act" analysis was unsustainable, according to the BRB, because it was not consistent with applicable law, i.e., the ALJ "did not address the diligence, motive and futility factors in the manner directed by [this Court's *Sharpe I* opinion]." *See id.* at 7.

The BRB interpreted *Sharpe I* to hold "that modification should be granted only when to do so would render justice *in the claim to be reopened*." 2009 BRB Decision 7 (emphasis added). With that understanding, the BRB limited the futility question to whether Westmoreland could recoup any overpayment of living miner's benefits from Mr. Sharpe's estate — the answer being an undisputed "no." *See id.* at 8. Thus, the BRB deemed the ALJ's futility analysis to be "fundamentally flawed," in that "he determined that it was in the interest of justice to grant modification of the decision in [Mr. Sharpe's] claim in order to preclude [Mrs. Sharpe's] reliance on collateral estoppel in the survivor's claim, a separate claim." *Id.*

With respect to diligence, the BRB did not directly confront the ALJ's finding that Westmoreland alone was prejudiced by the seven-year gap between the 1993 ALJ Decision and the 2000 Modification Request. Moreover, the BRB did not question the premise, recited by the ALJ, that "'a modification request cannot be denied out of hand . . . on the basis that the evidence may have been available at an earlier stage in the proceeding.'" *See* 2008 ALJ Decision 9 n.9 (emphasis omitted) (quoting *Old Ben Coal Co.*, 292 F.3d at 546). The BRB took issue, however, with the ALJ's acceptance of Westmoreland's assertion that its Modification Request was premised on new evidence uncovered during "discovery efforts that were prompted by the filing of the survivor's claim." *See id.* Specifically, the BRB pointed out that Westmoreland relied solely on old evidence when it filed its Modification Request, and only submitted its new evidence after the modification

proceedings were already underway. *See* 2009 BRB Decision 7 & n.3.

The BRB concluded that "the nature of the supporting evidence [Westmoreland] initially proffered," along with "[t]he timing of [its Modification Request]," proved what the company itself admitted: that its "motive in seeking to set aside the award of benefits in [Mr. Sharpe's] claim was to evade application of the irrebuttable presumption of death due to pneumoconiosis," as well as "application of the doctrine of collateral estoppel," in Mrs. Sharpe's survivor's claim. *See* 2009 BRB Decision 6, 7-8. The BRB also indicated that, by finding "that correcting an erroneous award of benefits trumped concerns about employer's reasons for requesting modification," the ALJ had wrongly discounted the motive behind Westmoreland's Modification Request. *See id.* at 7.

Taking account of motive, the BRB observed that Westmoreland "was attempting to circumvent the law, which, in this case, prohibited employer from defending against the survivor's claim by showing that the miner did not have complicated pneumoconiosis." 2009 BRB Decision 8. The BRB then underscored that "[g]ranting modification when the moving party's motive is to circumvent the law does not render justice under the Act." *Id.* For support, the BRB cited *Verderane v. Jacksonville Shipyards, Inc.*, 772 F.2d 775, 780 (11th Cir. 1985) (disallowing modification under 33 U.S.C. § 922 where employer sought to circumvent its earlier waiver of limited liability relief). The BRB also invoked *Sharpe I*, concluding that we therein "explicitly condemned" the motive "'to thwart . . . claimant's good faith claim'" for being adverse to "the remedial purpose of the [Black Lung Benefits Act]." 2009 BRB Decision 8 (first alteration in original) (quoting *Sharpe I*, 495 F.3d at 133). That is, as we recognized in *Sharpe I*, "'if the party's purpose in filing a modification is to thwart a claimant's good faith claim or an employer's good faith defense, the remedial purpose of the statute is no longer

served.'" 495 F.3d at 133 (quoting *Old Ben Coal Co.*, 292 F.3d at 546).

Importantly, because there was "nothing remarkably different about the new evidence that [Westmoreland eventually] submitted," the BRB reasoned that it was appropriate to consider "the interest in finality." *See* 2009 BRB Decision 8 (citing *Sharpe I*, 495 F.3d at 133 n.15 (recognizing that "finality interests may sometimes be relevant to a proper modification request ruling")). The BRB noted the absence of "particularly reliable evidence," such as "autopsy evidence," *id.* at 9, and concluded, given the circumstances, that it was "proper to grant survivor's benefits based on finding[s] made during the miner's life," *id.* at 11. Drawing on a Seventh Circuit opinion approving the use of offensive nonmutual collateral estoppel in a survivor's claim, the BRB explained: "'[T]here is no point in readjudicating the question whether a given miner had pneumoconiosis unless it is possible to adduce highly reliable evidence — which as a practical matter means autopsy results. Otherwise the *possibility* that the initial decision was incorrect is no reason to disturb it.'" *Id.* (quoting *Zeigler Coal Co. v. Dir., OWCP*, 312 F.3d 332, 334 (7th Cir. 2002)).

Having assessed futility, diligence, motive, and finality, the BRB concluded "that modification [of Mr. Sharpe's living miner's benefits award] would not render justice." 2009 BRB Decision at 9. But the BRB did not stop there; rather, it proceeded to review — and reject — the ALJ's ruling that the 1993 complicated pneumoconiosis finding was premised on a mistake of fact. *See id.* (acknowledging significance of "accuracy" in modification proceedings). In so doing, the BRB decided that the ALJ's accuracy determination was "neither rational nor supported by substantial evidence." *Id.* Rather, the 2008 ALJ Decision "was based on more of the same evidence considered [in 1993], and on a flawed analysis of [the 1993 ALJ Decision]." *Id.* at 12.

The BRB's final conclusion concerning the Modification Request was that the ALJ "abused his discretion in holding that modification of the decision awarding benefits in [Mr. Sharpe's] claim was in the interest of justice." 2009 BRB Decision 12. According to the BRB, the ALJ's misapprehension of the applicable law led to "a clear error of judgment on the conclusion he reached upon a weighing of the relevant factors." *Id.* (alteration and internal quotation marks omitted). Consequently, the BRB reversed the 2008 ALJ Decision insofar as it granted modification, by retroactive denial, of Mr. Sharpe's living miner's benefits award. *Id.* The BRB further concluded that "offensive non-mutual collateral estoppel precludes [Westmoreland] from relitigating, in [Mrs. Sharpe's] survivor's claim, the issue of the existence of complicated pneumoconiosis," and that Mrs. Sharpe "is entitled to the irrebuttable presumption of death due to pneumoconiosis set forth in [20 C.F.R. § 718.304]." *Id.* at 14. The BRB thus recognized Mrs. Sharpe's "entitlement to benefits in the survivor's claim" and reversed the ALJ's contrary ruling. *Id.* at 16-17.[7]

## II.

As we recognized in *Sharpe I*, an ALJ possesses broad — but not unlimited — discretion in ruling on modification requests. *See* 495 F.3d at 130 ("Such an exercise of discretion by an ALJ . . . 'is not boundless and subject to automatic affirmance.'" (quoting *Westberry v. Gislaved Gummi AB*, 178 F.3d 257, 261 (4th Cir. 1999))). A modification ruling will be reversed if it "was 'guided by erroneous legal principles,' or

[7]One member of the BRB's three-judge panel dissented, explaining that he would affirm the 2008 ALJ Decision "[b]ecause the administrative law judge considered each of the ['justice under the act'] factors identified [in *Sharpe I*] and rendered findings that are rational and supported by substantial evidence." 2009 BRB Decision 19 (Roy P. Smith, J., dissenting). Westmoreland subsequently moved for reconsideration en banc of the 2009 BRB Decision, which motion was denied on a 3-2 vote by order of October 27, 2010. Accordingly, Westmoreland filed its petition for review in this Court.

if the adjudicator 'committed a clear error of judgment in the conclusion it reached upon a weighing of the relevant factors.'" *Id.* (quoting *Westberry*, 178 F.3d at 261). Such standard is consistent with the BRB's general mandate to affirm the ALJ if his "findings of fact and conclusions of law are supported by substantial evidence, are rational, and are consistent with applicable law." *See* 2009 BRB Decision 2 (citing 33 U.S.C. § 921(b)(3)). Where the BRB has reversed the ALJ, we must "review the BRB's decision for errors of law and to ensure the BRB's decision adhered to its statutory standard of review." *Dehue Coal Co. v. Ballard*, 65 F.3d 1189, 1193 (4th Cir. 1995). More generally, "we review de novo the BRB's conclusions of law." *Collins v. Pond Creek Mining Co.*, 468 F.3d 213, 217 (4th Cir. 2006) (conducting de novo review of legal aspects of BRB's collateral estoppel ruling).

III.

A.

In assessing Westmoreland's petition for review of the 2009 BRB Decision, we begin with the Modification Request. Consistent with the modification statute (33 U.S.C. § 922), the implementing regulation provides:

> Upon his or her own initiative, or upon the request of any party on grounds of a change in conditions or because of a mistake in a determination of fact, the deputy commissioner may, at any time before one year from the date of the last payment of benefits, or at any time before one year after the denial of a claim, reconsider the terms of an award or denial of benefits.

20 C.F.R. § 725.310(a);[8] *see also* 33 U.S.C. § 922 (specifying

---

[8]The current version of 20 C.F.R. § 725.310(a) replaces "the deputy commissioner" with "the district director." Westmoreland's Modification Request was first considered — and denied — by the district director. *See* 2009 BRB Decision 3 (explaining that district director's adverse decision prompted Westmoreland to request ALJ hearing).

that "a new compensation order . . . may terminate, continue, reinstate, increase, or decrease . . . compensation, or award compensation"). To be sure, "[t]he plain import of [the mistake-of-fact provision is] to vest a deputy commissioner with broad discretion to correct mistakes of fact, whether demonstrated by wholly new evidence, cumulative evidence, or merely further reflection on the evidence initially submitted." *O'Keeffe v. Aerojet-Gen. Shipyards, Inc.*, 404 U.S. 254, 256 (1971). Significantly, however, due consideration must yet be given to whether modification would render justice under the Black Lung Benefits Act, whose stated purpose is

> to provide benefits . . . to coal miners who are totally disabled due to pneumoconiosis and to the surviving dependents of miners whose death was due to such disease; and to ensure that in the future adequate benefits are provided to coal miners and their dependents in the event of their death or total disability due to pneumoconiosis.

30 U.S.C. § 901(a); *see Old Ben Coal Co. v. Dir., OWCP*, 292 F.3d 533, 546 (7th Cir. 2002) ("[A]n ALJ's administration of 'justice' [must] be grounded in the stated purpose of the Act . . . ."); *Gen. Dynamics Corp. v. Dir., OWCP*, 673 F.2d 23, 25 (1st Cir. 1982) ("In deciding whether to reopen a case under [33 U.S.C. § 922], a court must balance the need to render justice against the need for finality in decision making: The basic criterion is whether reopening will 'render justice under the act.'" (internal quotation marks omitted)).

We endeavored in our *Sharpe I* opinion to outline the "justice under the act" factors, as described by this Court, our sister circuits, and the Supreme Court. Unfortunately, instead of heeding the legal principles spelled out in *Sharpe I* and other pertinent authorities, the 2008 ALJ Decision concocted a new test for modification requests, under which modification must automatically be granted if the adjudicator finds (1) a prior mistake of fact and (2) an absence of so-called "bad conduct"

by the requesting party. Simply put, the ALJ's test is not the proper analysis. While the ALJ certainly enjoys wide discretion in deciding whether to modify a benefits award, that discretion does not extend to reinventing the applicable law.

In these circumstances, the 2009 BRB Decision properly concluded, faithful to the BRB's statutory standard of review, that the ALJ was guided by erroneous legal principles and, thus, abused his discretion in granting Westmoreland's Modification Request. Moreover, the BRB was right to reverse the ALJ's modification ruling, rather than vacate and remand for further proceedings.

Notably, the respondent Director of the Office of Workers' Compensation Programs urges the very disposition that we announce today, but on the narrow ground that Westmoreland's Modification Request is fatally futile. The Director, like the BRB, places the onus on Westmoreland to "show that it can obtain one of the statutory remedies *in the claim it seeks to modify*," i.e., "in Mr. Sharpe's lifetime claim." Br. of Fed. Resp't 24. According to the Director, the relief sought by Westmoreland — "[r]elief from the collateral estoppel effect of a factual finding" — "is not an available statutory remedy." *Id.* Moreover, the Director asserts that the statutory remedies that do exist — including having the living miner's award "terminate[d]" or "decrease[d]," *see* 33 U.S.C. § 922 — are not obtainable by Westmoreland because "it cannot recover any of the payments made on that claim." Br. of Fed. Resp't 24. In the Director's view, that is the end of the Modification Request analysis, given that "if the request for relief is futile, modification must be denied on that basis alone." *Id.* at 15 n.7 (citing *Old Ben Coal Co.*, 292 F.3d at 547, for the proposition that "the remedial purpose of the Act . . . would be thwarted if an ALJ were required to reopen proceedings if it were clear from the moving party's submissions that reopening could not alter the substantive award").

We generally accord deference to the Director, as the administrator of the Black Lung Benefits Act, "in his reasonable interpretation of the Act's ambiguous provisions." *W. Va. CWP Fund v. Stacy*, 671 F.3d 378, 388 (4th Cir. 2011) (explaining that when "the Director's position is being advanced via litigation, it is entitled to respect but only to the extent that it has the power to persuade" (alterations and internal quotation marks omitted)). We need not ratify nor reject the bright-line futility ruling advocated by the Director today, however, because the 2009 BRB Decision otherwise merits affirmance.[9] Adapting the words of the Seventh Circuit's *Old Ben Coal Co.* opinion to the present situation, "[w]e do not think it wise or consonant with the grant of discretion in the statute . . . to unnecessarily cabin the ALJ's ability to address the complexities of a motion to reopen." *See* 292 F.3d at 547.

Notwithstanding the possible futility of Westmoreland's Modification Request, the motive behind it is patently improper. *See* 2009 BRB Decision 8 (denouncing Westmoreland's "attempt[ ] to circumvent the law, which, in this case, prohibited employer from defending against the survivor's claim by showing that the miner did not have complicated pneumoconiosis" (citing *Sharpe I*, 495 F.3d at 133)). We indeed highlighted in *Sharpe I* that, "'if the party's purpose in filing a modification is to thwart a claimant's good faith claim or an employer's good faith defense, the remedial purpose of the statute is no longer served.'" 495 F.3d at 133 (quoting *Old Ben Coal Co.*, 292 F.3d at 546). The ALJ disregarded that principle, instead validating Westmoreland's motive as occasioning the simple use of "the available legal means to attempt to protect and obtain justice for itself." 2008 ALJ Decision 10. But the *Old Ben Coal Co.* court rejected the ALJ's exact premise, concluding that, where a modification request is aimed at thwarting a good faith claim or defense, the denial of modification does not constitute "'punish[-

---

[9]To the extent that *Sharpe I* has been interpreted to compel the Director's position on futility, it has been misread.

ment]'" for "simply . . . employ[ing] the procedural mecha-
nisms instituted by Congress." *See* 292 F.3d at 546. At
bottom, allowing employers to regularly use modification to
evade application of the collateral estoppel doctrine and the
irrebuttable presumption of death due to pneumoconiosis
would effectively eradicate those entrenched legal principles.
*See Usery v. Turner Elkhorn Mining Co.*, 428 U.S. 1, 24-26
(1976) (upholding irrebuttable presumption of death due to
pneumoconiosis); *Zeigler Coal Co. v. Dir., OWCP*, 312 F.3d
332, 333 (7th Cir. 2002) (observing "that normal rules of pre-
clusion govern administrative proceedings in black lung
cases"); *see also supra* note 2 (relaying that, under recent
amendments to the Black Lung Benefits Act, there is now an
automatic entitlement to survivor's benefits).

We leave open the question of whether such an improper
motive can ever be outweighed by the strong interest in accu-
racy underlying the modification statute, for the 2009 BRB
Decision soundly concluded that accuracy cannot offset
motive and other "justice under the act" factors here. The
BRB directed some attention to Westmoreland's diligence,
pointing out that the company — having sat silent for years
since forgoing its right to this Court's review of the 1993 ALJ
Decision — filed the 2000 Modification Request in response
to Mrs. Sharpe's survivor's claim and only later proffered
new evidence. *See* 2009 BRB Decision 7 & n.3.[10]

The BRB focused more intently on the quality of the evi-
dence, old and new, concluding that it was not sufficiently

---

[10]The BRB was right not to question the ALJ's refusal to penalize West-
moreland solely because the new evidence may have been available long
before the Modification Request was made. *See Banks v. Chi. Grain Trim-
mers Ass'n*, 390 U.S. 459 (1968). There were grounds, however, for the
BRB to criticize the ALJ's finding that only Westmoreland was prejudiced
by the seven-year delay between the 1993 ALJ Decision and the 2000
Modification Request. For example, Mrs. Sharpe indicates that, as a result
of Westmoreland's long silence, "no autopsy had ever been obtained." Br.
of Resp't 21.

compelling to justify reversing the 1993 living miner's benefits award. *See* 2009 BRB Decision 8 (deeming it appropriate to consider "the interest in finality" because there was "nothing remarkably different about the new evidence"); *see also Old Ben Coal Co.*, 292 F.3d at 547 (explaining that the modification analysis "will no doubt need to take into consideration many factors including . . . the quality of the new evidence"). In allowing the 2009 BRB Decision to stand, we are not unmindful of the modification statute's general "preference for accuracy over finality in the substantive award." *See Old Ben Coal Co.*, 292 F.3d at 541. We also recognize that modification does not always require "a smoking-gun factual error, changed conditions, or startling new evidence." *See Jessee v. Dir., OWCP*, 5 F.3d 723, 725 (4th Cir. 1993) (observing that "the statute and regulations give the deputy commissioner the authority . . . to simply rethink a prior finding of fact"). But where, as here, a modification request is belatedly made with an improper motive and without compelling new evidence, the interest in finality rightly carries a great deal of weight. *See Old Ben Coal Co.*, 292 F.3d at 547 ("[W]e [do not] preclude the possibility that, in a given case, it might be quite appropriate to permit [the concern for finality of decision] to prevail in the adjudication of [the] case.").

Unlike the 2008 ALJ Decision, the 2009 BRB Decision acknowledged and applied the correct legal principles, arriving at the ineluctable conclusion that retroactively denying the late Mr. Sharpe's living miner's benefits award, in order to foil his widow's good faith survivor's claim, would not render justice under the Black Lung Benefits Act. We therefore will not disturb the BRB's rulings that the ALJ abused his discretion in granting Westmoreland's Modification Request, and that the ALJ's erroneous decision was subject to outright reversal.[11]

---

[11]In light of our disposition of the modification issue, we need not assess and review the BRB's rejection of the ALJ's ruling that the 1993

B.

Turning to the collateral estoppel issue, we recognized in our 2006 opinion in *Collins v. Pond Creek Mining Co.* that a widow could rely on offensive nonmutual collateral estoppel to establish simple pneumoconiosis in her survivor's claim. *See* 468 F.3d 213, 217-23 (4th Cir. 2006). We explained therein that

> [a] party seeking to rely on the doctrine of collateral estoppel is obliged to establish five elements: (1) that the issue sought to be precluded is identical to one previously litigated ("element one"); (2) that the issue was actually determined in the prior proceeding ("element two"); (3) that the issue's determination was a critical and necessary part of the decision in the prior proceeding ("element three"); (4) that the

complicated pneumoconiosis finding was premised on a mistake of fact. *See* 2009 BRB Decision 9-12. Were we to do so, however, we would agree with the BRB.

That being said, our handling of the accuracy question, and all of the "justice under the act" factors, has drawn the reproach of our distinguished dissenting colleague. The dissent principally criticizes us for ignoring accuracy's general prominence in the modification analysis and for failing to accord deference to the ALJ's factual findings — including, for example, the so-called "finding" that Westmoreland appropriately "'used the available legal means to attempt to protect and obtain justice for itself.'" *See post* at 28 (quoting 2008 ALJ Decision 10). The dissent's criticisms are belied by a fair reading of our decision today. We readily and repeatedly acknowledge herein the modification statute's strong interest in accuracy, but agree with the BRB that the ALJ abused his discretion by ruling that accuracy trumped all other considerations in this case. In so doing, we defer to the ALJ's findings of fact — such as his finding that Westmoreland filed its Modification Request to preclude operation of offensive nonmutual collateral estoppel in Mrs. Sharpe's survivor's claim — but not to the ALJ's conclusions of law — e.g., his conclusion (rather than "finding") that Westmoreland's motive was a proper one. We are thus confident that our decision fully comports with controlling legal principles, including the applicable standard of review.

prior judgment is final and valid ("element four"); and (5) that the party against whom collateral estoppel is asserted had a full and fair opportunity to litigate the issue in the previous forum ("element five").

*Id.* at 217 (internal quotation marks omitted). We also recognized that, where the proponent of collateral estoppel was a non-party to the prior proceeding, "we are obliged to assess whether allowing her to rely on the doctrine of offensive nonmutual collateral estoppel might be unfair to [the opposing party]." *Id.* at 221 (outlining "four nonexclusive factors" to be considered under *Parklane Hosiery Co. v. Shore*, 439 U.S. 322, 331-32 (1979), including "whether procedural opportunities are available to [the opposing party] in the present proceeding that were unavailable to it in the [prior] proceeding").

Although the ALJ opined that findings of complicated pneumoconiosis should never be given preclusive effect, *see supra* note 6 (discussing 2008 ALJ Decision 11 n.15), we agree with the BRB that the widow of a black lung benefits recipient may rely on offensive nonmutual collateral estoppel to establish complicated pneumoconiosis in her survivor's claim, *see* 2009 BRB Decision 12-16. Indeed, Westmoreland does not advocate a blanket bar, but rather asserts that collateral estoppel should be unavailable to Mrs. Sharpe in the particular circumstances of this case. Westmoreland principally contends that the complicated pneumoconiosis finding, made in the 1993 ALJ Decision and affirmed by the BRB in 1994, is not final (element four of the collateral estoppel test); that it did not have a full and fair opportunity to litigate the issue in the previous forum (element five); and that new procedural opportunities are now available to it (one of the *Parklane Hosiery Co.* fairness factors). All of those arguments rest on the notion that Westmoreland's Modification Request "validly placed the prior findings at issue." *See* Br. of Pet'r 42.

Westmoreland's assertion that that its Modification Request hindered the finality of the decisions finding complicated

pneumoconiosis must be rejected for the reasons delineated in the 2009 BRB Decision:

> Under [20 C.F.R. § 725.479 (entitled "Finality of decisions and orders")], filing a request for modification is not identified as a procedure that affects the finality of a Decision and Order. Indeed, 20 C.F.R. § 725.480 provides: "A party who is dissatisfied with a decision and order *which has become final* in accordance with [§] 725.479 may request a modification of the decision and order if the conditions set forth in [§] 725.310 are met." 20 C.F.R. § 725.480 (emphasis supplied). Thus, pursuant to [§] 725.480, modification requests do not alter the finality of a Decision and Order, but rather pertain to Decision and Orders that have become final. The Board's Decision and Order affirming [the ALJ's 1993] award of benefits in [Mr. Sharpe's] claim became final on November 23, 2004. *See* 20 C.F.R. § 802.406. Since [Westmoreland] did not appeal that decision, it cannot now be heard to question the [finality] of [the ALJ's] decision.

2009 BRB Decision 15. Additionally, we agree with the BRB that Westmoreland has no cause to contend that, in light of the new evidence proffered in support of its Modification Request, it did not have a full and fair opportunity to litigate the complicated pneumoconiosis issue in the prior proceeding. *See id.* ("The existence of new evidence is irrelevant to the issue of whether [Westmoreland] was provided a full and fair opportunity to present the evidence it had at that time."). Finally, we reject Westmoreland's bare and puzzling contention that its Modification Request and new evidence somehow constitute previously unavailable "procedural opportunities . . . that could readily cause a different result." *See Parklane Hosiery Co.*, 439 U.S. at 331. As such, we conclude that the BRB appropriately applied the doctrine of offensive nonmu-

tual collateral estoppel in approving Mrs. Sharpe's survivor's claim.

## IV.

Pursuant to the foregoing, we deny Westmoreland Coal Company's petition for review and affirm the 2009 BRB Decision denying modification of William Sharpe's living miner's benefits award and granting survivor's benefits to his widow Mae Ann Sharpe.

*PETITION FOR REVIEW DENIED*

AGEE, Circuit Judge, dissenting:

I respectfully dissent from the majority opinion. It errs, in my view, by failing to follow established precedent and by improperly substituting the judgment of the appellate court for that of the administrative law judge ("ALJ").

## I.

At the outset, it is critical to set forth the proper standard of review. "We review for abuse of discretion a decision to grant a modification request on a living miner's claim." *Sharpe v. Dir., OWCP*, 495 F.3d 125, 130 (4th Cir. 2007) ("*Sharpe I*"). The majority correctly states that a modification decision can be reversed based on a finding of abuse of discretion where it "was guided by erroneous legal principles, or if the adjudicator committed a clear error of judgment in the conclusion it reached upon a weighing of the relevant factors." *Ante* at 15-16 (quoting *Sharpe I*, 495 F.3d at 130 (internal quotation marks omitted)).

However, when an appellate court reviews the decision of an ALJ, we must be mindful of the "limited" scope of our judicial involvement. *See Ceres Marine Terminals, Inc. v.*

*Green*, 656 F.3d 235, 240 (4th Cir. 2011). As a panel of this court recently explained:

> As in all agency cases, *we must be careful not to substitute our judgment for that of the ALJ. Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990) ("Ultimately, it is the duty of the administrative law judge reviewing a case, and not the responsibility of the courts, to make findings of fact and to resolve conflicts in the evidence."). Because the ALJ is the trier of fact, we "defer to the ALJ's evaluation of the proper weight to accord conflicting medical opinions." *Stiltner v. Island Creek Coal Co.*, 86 F.3d 337, 342 (4th Cir. 1996). As long as substantial evidence supports an ALJ's findings, "[w]e must sustain the ALJ's decision, even if we disagree with it." *Smith v. Chater*, 99 F.3d 635, 637–38 (4th Cir. 1996). We review the legal conclusions of the Board and the ALJ de novo. *Island Creek Coal Co. v. Compton*, 211 F.3d 203, 208 (4th Cir. 2000).

*Harman Mining Co. v. Dir., OWCP*, 678 F.3d 305, 310 (4th Cir. 2012) (emphasis added). Thus, except as to matters of law, our review of the administrative record is highly circumscribed.

Furthermore, and as the majority rightly notes, when we review an order of the Benefits Review Board ("BRB") reversing the ALJ, we must "'ensure the BRB's decision adhered to its statutory standard of review.'" *Ante* at 16 (quoting *Dehue Coal Co. v. Ballard*, 65 F.3d 1189, 1193 (4th Cir. 1995)). By statute, the "findings of fact in the decision under review by the Board *shall be conclusive* if supported by substantial evidence in the record considered as a whole." 33 U.S.C. § 921(b)(3) (emphasis added). The "substantial evidence" standard is not a particularly difficult bar to meet as it is "more than a scintilla but less than a preponderance." *Ceres Marine Terminals*, 656 F.3d at 239 (quotation marks

and citation omitted). And in reviewing whether substantial evidence supports the ALJ's ruling, we and the BRB must give "[d]eference . . . to the fact-finder's inferences and credibility assessments[.]" *Id.* at 240. Thus, to affirm the BRB's reversal of the ALJ, we must agree with it that the ALJ's factual findings are unsupported by more than a scintilla of evidence. As the cases make clear, this bar is set as it is to prevent interference in the ALJ's statutory exercise of discretion by either the BRB or this Court.

Our highly deferential standard of review is significant in two respects. First, in the 2008 order, the ALJ made detailed factual findings with respect to whether William Sharpe ("Mr. Sharpe") suffered from complicated pneumoconiosis. As more fully explained below, these findings should be the baseline, if not altogether dispositive, of our appellate inquiry. To disturb the ALJ's findings with respect to the medical facts underlying the modification request is to ignore and exceed our limited judicial role.

Second, as Judge Smith noted in his dissent from the BRB's order reversing the ALJ, "the [ALJ] addressed each of [the factors identified in *Sharpe I*] at length in his Decision and Order and made findings that are rational and supported by substantial evidence." 2009 BRB Decision at 18 (Smith, J., dissenting). It is simply not our role to second guess the judgment of the ALJ when weighing factors such as the ALJ considered here. *See Harman Mining Co.*, 678 F.3d at 310 (reviewing the ALJ "to assess whether substantial evidence supports the factual findings of the ALJ and whether the legal conclusions of the ALJ are rational and consistent with applicable law.") (quotation marks and citation omitted).

The majority, circumventing the discretion afforded by law to the ALJ, cloaks its analysis in the false veil of de novo review, stating, *ante* at 18, that the BRB properly concluded that the ALJ's analysis was "guided by erroneous legal principles[.]" The record does not support that conclusion. The ALJ

based the decision to grant modification on the factors identified by this Court in *Sharpe I*; factors that we described as *factual* in nature. *See* 495 F.3d at 133 ("And in this situation, an objective adjudicator could readily identify significant *factual* issues that are pertinent to a proper evaluation of Westmoreland's Modification Request.") (emphasis added).

After directing the ALJ to consider, as a *factual* matter, questions such as "Should Westmoreland's motive in seeking modification be deemed suspect?" and "Is the Modification Request futile or moot[?]" *see id.*, the majority, apparently dissatisfied with the answers provided by the ALJ, now undertakes de novo review to revisit those answers and provide substitute factual answers it would have preferred had it been sitting as the ALJ.

For example, in *Sharpe I*, the court directed the ALJ to undertake a factual inquiry into Westmoreland's motive in seeking modification. *See id.* The ALJ did so, finding as a matter of fact that "Westmoreland simply used the available legal means to attempt to protect and obtain justice for itself." 2008 ALJ Decision at 10. The majority, however, undertakes its own independent, de novo review of Westmoreland's motives and reaches the opposite result, finding, *ante* at 19, that Westmoreland's motive was to "thwart[ ] a good faith claim or defense[.]" The majority's independent review inappropriately displaces the well settled role of the ALJ in black lung benefit litigation. *See Harman Mining Co.*, 678 F.3d at 310 ("As long as substantial evidence supports an ALJ's findings, we must sustain the ALJ's decision, even if we disagree with it.") (internal quotation marks and alteration omitted).

When the facts, as determined by the ALJ, are reviewed under the correct standard, the ALJ's decision should be affirmed and the BRB's decision reversed.

## II.

### A.

When interpreting § 22 of the Longshore and Harbor Workers' Compensation Act ("LHWCA")[1] 33 U.S.C. § 922, the Supreme Court has directed that we begin with the language of the statute. *See Metro. Stevedore Co. v. Rambo*, 515 U.S. 291, 295 (1995). The statute provides that:

> Upon his own initiative, or upon the application of any party in interest . . . , on the ground of a change in conditions or because of a mistake in a determination of fact by the deputy commissioner, the deputy commissioner may, at any time prior to one year after the date of the last payment of compensation, whether or not a compensation order has been issued, or at any time prior to one year after the rejection of a claim, review a compensation case . . . and . . . issue a new compensation order which may terminate, continue, reinstate, increase, or decrease such compensation, or award compensation.

33 U.S.C. § 922. The statute itself sets forth two grounds upon which a modification request should be granted: "on the ground of a change in conditions" and "because of a mistake in a determination of fact." In addition, the statutory text sets forth only one limitation: the one year period from either the date of the last payment of compensation or the date of the rejection of a claim. Other than this express limitation, there is simply no other textual limitation cabining the discretion of the ALJ to grant modification in accordance with the statute.

Of course, we do not read the statute in a vacuum. The Supreme Court has embossed § 922 with a gloss based on the

---

[1]Section 22 of the LHWCA is incorporated into the Black Lung Benefits Act by 30 U.S.C. § 932(a).

legislative history of that statute. The Court noted that the scope of the modification statute was expanded in 1934 to "broaden the grounds on which a deputy commissioner can modify an award when changed conditions or a mistake in a determination of fact makes such modification desirable in order to render justice under the act." *O'Keeffe v. Aerojet-General Shipyards, Inc.*, 404 U.S. 254, 255 (1971) (per curiam) (quoting S. Rep. No. 588, 73d Cong., 2d Sess., 3-4 (1934)) (internal alterations and quotation marks omitted).

The ultimate guidepost for our legal analysis, therefore, is, what constitutes "justice under the Act"? The majority begins to answer this query by reference to the "stated purpose" of the Black Lung Benefits Act, which is

> to provide benefits . . . to coal miners who are totally disabled due to pneumoconiosis and to the surviving dependents of miners whose death was due to such disease; and to ensure that in the future adequate benefits are provided to coal miners and their dependents in the event of their death or total disability due to pneumoconiosis.

*Ante* at 17 (quoting 30 U.S.C. § 901(a)). It is of course true that the purpose of the Black Lung Benefits Act is to ensure that coal miners who actually suffer from black lung disease are compensated. And, as a corollary to this purpose, to provide that when a coal miner dies from black lung disease his dependents receive derivative benefits. However, as with any statutory grant of rights not accorded at common law, only those who actually qualify as a recipient of that right come within its purview. As the Seventh Circuit aptly stated, "Congress accomplished this goal, in part, by incorporating within the statute a broad reopening provision to *ensure the accurate distribution of benefits*." *Old Ben Coal Co. v. Dir., OWCP*, 292 F.3d 533, 546 (7th Cir. 2002) (emphasis added).

Thus, our search for "justice under the Act" should be guided, first and foremost, by the need to ensure accurate ben-

efit distribution. *See, e.g.*, *O'Keeffe*, 404 U.S. at 256 (modification statute provides the deputy commissioner with "broad discretion . . . *to review factual errors* in an effort 'to render justice under the act'") (emphasis added); *Banks v. Chicago Grain Trimmers Ass'n*, 390 U.S. 459, 464 (1968) (noting that the purpose of the modification statute was to "allow[ ] modification *where a mistake in a determination of fact makes such modification desirable* in order to render justice under the act") (emphasis added) (internal quotation marks omitted); *Old Ben Coal Co.*, 292 F.3d at 547 ("justice under the Act . . . *cabins the discretion* of the ALJ to keep in mind the basic determination of Congress that *accuracy of determination* is to be given great weight in all determinations under the Act") (emphasis added).

Thus, precedent directs that accuracy must be, at the very least, the jumping off point for any discussion of "justice under the act."[2] As the Seventh Circuit recognized in *Old Ben Coal Co. v. Dir., OWCP*, however, "justice under the act" is not the same as "the interest of justice"—a standard the court described as "amorphous." 292 F.3d 533, 547 (7th Cir. 2002). Therefore, to the extent that factors other than accuracy are relevant to the ALJ's decision, they should be considered in light of the stated preference for accuracy in the award of benefits. *See id.* ("This distinction is not simply one of semantics.

---

[2]Factors other than accuracy may bear upon the determination of whether modification would render "justice under the act" even where there is a materially inaccurate factual determination. In *McCord v. Cephas*, 532 F.2d 1377 (D.C. Cir. 1976), for example, the D.C. Circuit remanded a modification order to the ALJ to consider whether a party's great "recalcitrance [,]. . . callousness[,] . . . and . . . self-serving ignorance" in failing to participate in administrative proceedings defeated the purposes of "justice under the act." *Id.* at 1381. Importantly, the *McCord* court did not rule that modification was improper on those facts. Rather, recognizing the important place of the ALJ's exercise of discretion in the statutory benefits scheme, that court remanded to the ALJ to consider, in the first instance, whether McCord's conduct stood as a bar to modification. *Id.*

The ['justice under the Act'] formulation cabins the discretion of the ALJ to keep in mind the basic determination of Congress that accuracy of determination is to be given great weight in all determinations under the Act.").

## B.

The mandate of *Sharpe I* directed the ALJ "to assess, *in addition to the need for accuracy*, the diligence and motive of Westmoreland in seeking modification . . . , the possible futility of modification, . . . and other factors that may bear on whether [modification] will 'render justice under the Act.'" 495 F.3d at 134 (emphasis added). Despite *Sharpe I*'s call for the ALJ to make factual findings related to the accuracy of the initial benefit award, however, the majority simply disregards those findings.

On review of the ALJ's decision, the majority jettisons any purported concern for accuracy, and focuses only on consideration of Westmoreland's motive, its diligence, and the alleged futility of modification. While it is true that *Sharpe I* identified those considerations as "potentially relevant to whether a modification request should be granted," *id.* at 133, there is simply no support for the majority's approach in the case at bar—focusing *solely* on those factors at the expense of the core Black Lung Benefits Act determinant: accuracy. Indeed, it is telling that in its opinion today, the majority devotes only a few bare sentences by footnote as to whether the ALJ's decision was correct as to the question of whether Mr. Sharpe suffered from complicated pneumoconiosis. *See ante* at 21-22 n.11 (declining to review the BRB's rejection of the ALJ's conclusion that the 1993 complicated pneumoconiosis ruling was based on a mistake of fact, but nevertheless ruling that "were we to do so, . . . we would agree with the BRB.").[3] I

---

[3]As accuracy is indeed the touchstone of modification analysis, the majority could have disposed of the underlying modification request by ruling that the ALJ's medical findings were unsupported by substantial

fail to see how a valid analysis of whether modification serves "justice under the act" can be undertaken without first considering whether the benefits award Westmoreland seeks to modify was, in fact, accurate.

The majority's formulation of "justice under the Act" is therefore fundamentally in error, not for noting that the ALJ should consider factors other than accuracy, but rather for failing to provide any analytical framework for evaluating when and under what circumstances accuracy must give way to other considerations. The majority simply recites the factors of motive, diligence, and futility, reweighs the evidence, and summarily concludes that those factors militate against modification. The majority opinion turns the "justice under the act" standard on its head, rewriting the formulation to reflect the sort of amorphous considerations that *Old Ben Coal* discussed and rejected.

The majority concludes today, without support from any authority, that motive, futility, and an assumed lack of diligence are so overwhelming in this case that accuracy is irrelevant, notwithstanding that accuracy is the only consideration identified in the precedent of this court and the Supreme Court as being tied to the purposes of the Black Lung Benefits Act.[4] Even *McCord* and *Old Ben*, the only other cases on the

---

evidence. However, the ALJ's medical findings are firmly established as factual in nature, *e.g.*, *Harman Mining Co.*, 678 F.3d at 310-12 (reviewing ALJ's medical findings only to determine whether they were supported by substantial evidence), and given the exhaustive (and persuasive) review of the evidence undertaken by the ALJ, reversal on factual grounds would be a high mountain for an appellate court to climb.

[4]The majority candidly acknowledges that it does not undertake to balance accuracy against any other factors, noting that it "leave[s] open the question of whether such an improper motive can ever be outweighed by the strong interest in accuracy underlying the modification statute[.]" *Ante* at 20. Instead, the majority erroneously relies on the BRB's purported determination that "accuracy cannot offset motive and other 'justice under the act' factors here." *Id.*

Circuit Court of Appeals level to remand a modification attempt based on the conduct of a party, did not go so far as the majority. Rather, those cases rightly recognized that the discretion lies with the ALJ, not the courts, to weigh the relevant factors to determine whether modification renders justice under the act.

### C.

Contrary to the majority's holding, the ALJ in this case applied the proper standard to the modification request and his decision is entitled to deference both from this Court and the BRB.

In my view, the majority wrongly concludes that the ALJ was guided by erroneous legal principles. I do not agree that the ALJ "reinvent[ed] the applicable law," or failed to faithfully apply the principles set forth in *Sharpe I. Ante* at 18. On the contrary, a fair assessment of the ALJ's decision reveals that the opposite is true.

The ALJ began by setting forth the applicable legal standard for review of Westmoreland's modification request. The ALJ carefully recited the holdings of *Sharpe I* and *Old Ben*

---

However, the BRB did not make that determination in its 2009 Decision. Instead, the BRB stated that,

> although the *Sharpe [I]* court indicated that modification should be denied if the factors discussed *supra* show that modification would not render justice, the court also discussed another factor relevant to a determination of whether modification would render justice, i.e., accuracy. Accordingly, we will discuss the [ALJ's] determination that Judge Johnson [the prior ALJ] erred in finding complicated pneumoconiosis established in the miner's claim.

2009 BRB Decision at 8-9. Although the BRB may have erred by characterizing accuracy as a limited factor to consider (rather than noting its primary role at the top of the "justice under the act" hierarchy), unlike the majority, it recognized that accuracy at least has a place in the discussion.

*Coal Co.*, placing appropriate emphasis on the latter's pronouncement that the ALJ must "'keep in mind the basic determination that accuracy of determination is to be given great weight in all determinations under the Act.'" 2008 ALJ Decision at 5 (quoting *Old Ben Coal Co.*, 292 F.3d at 547).

After discussing several cases on point, the ALJ arrived at the following legal conclusions:

> (1) accuracy is the overarching goal of "justice under the Act," and (2) modification should be barred only where the party seeking it has engaged in the type of conduct that occurred in *McCord* (refusal to participate in the prior administrative proceedings, or in *Kinlaw [v. Stevens Shipping and Terminal Co.*, 33 BRBS 68 (1999)] (attempting to overcome earlier litigation mistakes by "retrying" the case).

2008 ALJ Decision at 7.

The majority mischaracterizes this holding, accusing the ALJ of crafting a formulation wherein "modification must automatically be granted if the adjudicator finds (1) a prior mistake of fact and (2) an absence of so-called 'bad conduct' by the requesting party." *Ante* at 17-18. But, as the foregoing quote proves, the ALJ did not hold that modification is automatic in those circumstances. Rather, the ALJ simply explained an established point of law: because accuracy is the overarching purpose of the modification statute, modification should be granted where the party requesting modification demonstrates that the ruling sought to be modified was factually incorrect, unless there is a very compelling reason not to grant modification (i.e., to set accuracy aside). The ALJ gave two nonexclusive examples from the caselaw, but at no point did the ALJ state a *per se* rule or limit the scope of analysis in future cases with different facts. Tellingly, the ALJ gave several additional examples of factors that might weigh against modification in an appropriate case (serial petitions,

etc.). *See* 2008 ALJ Decision at 11 n.16. A fair reading of the full text of the ALJ's opinion shows the majority opinion mischaracterizes its actual holding.

The ALJ's formulation of "justice under the act" was not guided by erroneous legal principles. To the contrary, it was based on the unassailable legal principle that accuracy is of paramount importance in rendering modification decisions. In this case, it is the majority that arbitrarily alters the "justice under the act" standard to something far removed from the purposes of the Black Lung Benefits Act. The majority's approach is counterintuitive, asking first whether the party requesting modification has engaged in some manner of egregious conduct (or, as is in the case at bar, benign conduct deemed suspect by the majority), and, only upon answering that question in the negative deems the accuracy of the benefits award to be relevant. Such an approach does not render "justice under the Act."

Because a proper assessment of the ALJ's legal conclusions from the established facts shows the ALJ applied the proper legal analysis, I would grant the petition for review and reverse the judgment of the BRB on the foregoing basis alone.

### III.

Notwithstanding my objection to the erroneous weight that the majority gives to the "other factors," the ALJ's assessment of each factor was correct as a matter of law and supported by substantial evidence. I address each factor in turn.

### A.   Accuracy

As accuracy is the primary consideration of whether modification renders "justice under the Act," I begin with a review of the ALJ's findings that the 1993 benefit award on Mr. Sharpe's living miner's claim was based on a mistake of fact

because the evidence does not establish complicated pneumoconiosis.

I note at the outset that Mrs. Sharpe has forfeited her challenge to the ALJ's factual conclusions regarding the 1993 benefit award by failing to raise *any* argument whatsoever related to that issue in her brief on appeal. "Even appellees waive arguments by failing to brief them." *Roth v. U.S. Dep't of Justice*, 642 F.3d 1161, 1181 (D.C. Cir. 2011) (quoting *United States v. Ford*, 184 F.3d 566, 578 n.3 (6th Cir. 1999); *see Mironescu v. Costner*, 480 F.3d 664, 677 n.15 (4th Cir. 2007) (citing Federal Rule of Appellate Procedure 28(b) for the proposition that appellees must state their contentions and the reasons for them "at the risk of abandonment of an argument" not presented) (quotation marks and citation omitted). Despite the centrality in this appeal of the issue of whether the 1993 benefit award was correct, Mrs. Sharpe devotes not one word in her brief to an explanation of why it was so. On that basis alone, I would leave undisturbed the ALJ's medical findings.

Even ignoring the waiver, the ALJ's findings are manifestly supported by substantial evidence. The ALJ reviewed the medical evidence in this case twice: once in 2004 and again in 2008 on remand from this Court's judgment in *Sharpe I*. In both instances, the ALJ ruled that Mr. Sharpe did not suffer from complicated pneumoconiosis.

The ALJ's ruling was based on his review of x-ray evidence gathered in 1990, 1992, 1993, and twice in 2001. 2008 ALJ Decision at 14. After discussing the medical opinions that had been issued to date, the ALJ stated the following in support of his determination:

> [I]n considering the x-ray evidence, I find it highly significant that — although pneumoconiosis is a progressive and irreversible disease — all the physicians who provided the 13 interpretations of the

post-1989 "readable" films found that these films do not indicate the presence of complicated pneumoconiosis. . . . All of these physicians are well-qualified to interpret chest x-rays for the presence of pneumoconiosis, as they are either B-readers . . . , or dually qualified . . . . I find that the post-1989 x-ray evidence, which *unanimously* is *contra* the presence of complicated pneumoconiosis, outweighs the four complicated pneumoconiosis interpretations of the two 1989 films. In addition, further doubt is cast on the interpretation of complicated pneumoconiosis by the five physicians who found that the April 3, 1989 x-ray does not reveal complicated pneumoconiosis and the six physicians who found that the July 27, 1989 x-ray does not reveal complicated pneumoconiosis.

2008 ALJ Decision at 14 (emphasis in original).

On review, the BRB rejected the ALJ's assessment, only because the BRB improperly excluded the evidence the ALJ relied upon in concluding that Mr. Sharpe did not suffer from complicated pneumoconiosis. The BRB held that

[T]he evidence submitted on modification, consisting of x-rays, CT scans, medical records and medical opinions spanning the period from 1990 to the miner's death in 2000, is of the same sort as the evidence that was available during the miner's life. Under these circumstances, it is proper to grant survivor's benefits based on [the] finding made during the miner's life.

2009 BRB Decision at 11. In excluding clearly reliable evidence that Mr. Sharpe did not suffer from pneumoconiosis, the BRB imposed a requirement, not found in any case or statute, that the ALJ must only consider its version of "highly reliable evidence," i.e., "autopsy results" in granting a modifi-

cation. *Id.* In this respect, the BRB grossly misstated the law and reached a conclusion to ignore evidence not on any proven ground of relevance, but as an arbitrary and capricious act. The cases to have considered the issue are *unanimous* that there is no limitation on the *type* of evidence that may justify granting modification. *See, e.g.*, *O'Keeffe*, 404 U.S. at 256 (modification permitted "to correct mistakes of fact, whether demonstrated by wholly new evidence, cumulative evidence, or merely further reflection on evidence initially submitted."); *Old Ben Coal Co.*, 292 F.3d at 546 ("neither the statute nor its interpreting case law limits the type of evidence that may justify reopening").

In this respect, the BRB acted well outside the statutory standard of review and relied on incorrect principles of law. If the BRB had considered (as it was bound to do) all of the evidence reviewed by the ALJ, it would no doubt have concluded, as Judge Smith did in dissent, that the ALJ's findings were supported by substantial evidence. Judge Smith also noted that, as to the factual question of whether Mr. Sharpe suffered from pneumoconiosis, the BRB had previously affirmed the ALJ's findings based on the same evidence. 2009 BRB Decision at 19 (Smith, J., dissenting). The ALJ's determination of accuracy is thus entitled to deference on appeal and there is no basis to set it aside.

## B.   Futility

As the majority notes, the Director's brief on appeal urges us to reject Westmoreland's modification request on the grounds that it is "futile or moot." (Br. for the Fed. Resp. at 24.) Westmoreland's request is not futile.

As we recently explained:

> The Director, as the administrator of the [Black Lung Benefits Act], is entitled to deference in his reasonable interpretation of the Act's ambiguous

provisions. *See Betty B. Coal Co. v. Dir., OWCP*, 194 F.3d 491, 498 (4th Cir. 1999). When—as here—the Director's position is being advanced via litigation, it is "'entitled to respect' . . . but only to the extent that [it has] the 'power to persuade[.]'" *Christensen v. Harris County*, 529 U.S. 576, 587 (2000) (quoting *Skidmore v. Swift & Co.*, 323 U.S. 134, 140 (1944)).

*W. Va. CWP Fund v. Stacy*, 671 F.3d 378, 388 (4th Cir. 2011). Simply put, the Director's position is unpersuasive.

Although the Director proffers three rationales for its claim that Westmoreland's claim is moot or futile, I focus only on the third—the Director's argument that avoidance of the collateral-estoppel rule is not a type of relief provided by the modification statute. (Br. of Fed. Resp. at 23-25.)

The Director first posits that "relief from a factual finding is not a proper remedy under modification." *Id.* at 23. The only support for this proposition comes from this Court's *Sharpe I* decision, wherein we stated that "although administrative adjudications do not constitute Article III proceedings to which the case or controversy mandate applies, a showing of futility may be pertinent to the proper handling of a modification request." 495 F.3d at 133 (internal citation omitted).

As the majority rightly states, *ante* at 19 n.9, this language should not be interpreted to compel the Director's position on futility. In fact, other than opining that futility may be a consideration in the decision whether to reopen a benefits award, there is nothing in the language of *Sharpe I* that indicates that relief from a factual finding is not a proper remedy under modification.

The Director, though, cites to the modification statute for the proposition that the "relief available to Westmoreland" is limited to being able to "terminate or decrease the compensa-

tion payable to Mr. Sharpe." (Br. of Fed. Resp. at 23-24.) The statute, however, contains no such limitation, but merely allows a finder of fact to reopen a benefits award upon, *inter alia*, a finding of a mistake of fact. 33 U.S.C. § 922. The Director improperly reads language into the statute, imposing a limitation not written by Congress, that a modification request must be directly tied to the payment of benefits to the miner (and conversely, cannot be related to the payment of survivor benefits derived from that miner).

When the artificial limitations suggested by the Director are not read into the statute, it becomes obvious that Westmoreland's modification request is not futile. Especially as a consequence of this Court's decision in *Collins v. Pond Creek Mining Co.*, 468 F.3d 213 (4th Cir. 2006), Westmoreland risks the real injury of automatic payment of erroneous survivor benefits to Mrs. Sharpe if it cannot contest the factual basis for Mr. Sharpe's living miner benefit award. In light of *Pond Creek*, I agree with the ALJ's conclusion that it is "reasonable to consider both the miner's claim and the survivor's claim . . . together when the question of 'futility' is considered." 2008 ALJ Decision at 11.

Considering "futility" in this light is also consistent with rendering "justice under the act." Pursuant to *Pond Creek*, Mrs. Sharpe becomes automatically eligible for survivor benefits as a consequence of the erroneous determination that Mr. Sharpe suffered from complicated pneumoconiosis. *See Pond Creek*, 468 F.3d at 222-23 (holding that a coal miner's widow may use offensive nonmutual collateral estoppel to establish that her husband had developed complicated pneumoconiosis). Thus, the question of whether Mr. Sharpe suffered from complicated pneumoconiosis is inextricably intertwined with the determination of whether Mrs. Sharpe is entitled to benefits. The two claims cannot be separated as the Director urges.

The modification request was not futile.

### C.   Diligence

Case law has recognized that diligence is an additional factor that the ALJ may consider when weighing whether a modification request will render "justice under the act." *See Sharpe I*, 495 F.3d at 134; *see also McCord*, 532 F.2d at 1381 ("the congressional purpose in passing the law would be thwarted by any lightly considered reopening at the behest of an employer who, right or wrong, could have presented his side of the case at the first hearing and who, if right, could have thereby saved all parties a considerable amount of expense and protracted litigation."). That having been said, the ALJ's findings with respect to Westmoreland's diligence are entitled to deference and should not be disturbed. The ALJ recognized that as a matter of law, the inquiry into Westmoreland's diligence is a limited one. Further, the ALJ did consider Westmoreland's diligence and concluded that Mrs. Sharpe was not prejudiced by Westmoreland bringing the modification proceeding.

While acknowledging that diligence is one possible factor to consider in the effort to effect "justice under the act," the ALJ rightly recognized the limited role that factor plays in the analysis, especially in light of the statute's strong preference for accuracy. In *McCord*, the ALJ noted, the court concluded that diligence was potentially relevant, however, it did so while noting that

> [i]t would be difficult to describe a history of greater recalcitrance, of greater callousness towards the processes of justice, and of greater self-serving ignorance, than the attitude displayed by McCord in the four-plus years from the time of Cephas' death on January 1, 1969, to January 31, 1973, when McCord, after receiving notice of the Deputy Commissioner's adverse award, first began to assert his defenses.

532 F.3d at 1381. There is no basis in the record upon which to claim Westmoreland's actions in this case have any semblance to those of the employer in *McCord*.

In *Jessee v. Dir., OWCP*, 5 F.3d 723 (4th Cir. 1993), we reasoned that limiting modification in the interest of finality was inconsistent with the broad discretion afforded the adjudicator of a modification proceeding. *Id.* at 725. Rather, we found that

> the statute and regulations give the deputy commissioner the authority, for one year after the final order on the claim, to simply rethink a prior finding of fact. Thus, to the extent the "principle of finality" ever applies to black lung claims, it was not triggered here, because Jessee requested modification before a year passed.

*Id.* The court's discussion of finality in *Jessee* is pertinent to the present case because it again affirms the ALJ's discretion to modify a benefits award within the statutory period, even on the ALJ's own accord. The ALJ in this case understood that diligence, like finality, plays a much diminished role in black lung modification proceedings as compared to the ordinary lawsuit. *See* 2008 ALJ Decision at 8 n.7 (quoting *Jessee*, 5 F.3d at 725) ("[T]he principle of finality just does not apply to [LWHCA] and black lung claims as it does in ordinary lawsuits.").

Consistent with our direction in *Sharpe I*, therefore, the ALJ conducted an analysis of Westmoreland's motive and concluded that it did not act improperly in waiting seven years to seek modification. The ALJ recited the following "real-world facts": (1) Westmoreland paid [Mr. Sharpe] Black Lung benefits each month for seven years (which also benefited [Mrs. Sharpe]), (2) [Mr. Sharpe's] estate has no assets from which Westmoreland can recoup its payments, and (3) Westmoreland had absolutely nothing to gain by waiting seven

years to seek modification." 2008 ALJ Decision at 8-9. From those facts, the ALJ concluded that Westmoreland did not lack diligence by waiting to seek modification.

The majority, however, citing to Mrs. Sharpe's brief on appeal, criticizes the ALJ's ruling with respect to diligence because, as a result of Westmoreland's silence "no autopsy [of Mr. Sharpe] had ever been obtained." *See ante* at 20 n.10 (citing Br. of Resp't at 21). This assertion is the only retort to the ALJ's decision with respect to diligence. The trouble with the majority's assertion, however, is that whether Westmoreland had anything to gain or lose by avoiding an autopsy is completely speculative. Indeed, as discussed above, the medical evidence of record strongly indicates that Mr. Sharpe did not have black lung disease, in which case, an autopsy would have vindicated Westmoreland's claim that modification would be proper to correct a mistake of fact.

The ALJ was correct, therefore, to rely on the facts before it and disregard idle speculation about what might have been had an autopsy been conducted. The ALJ properly exercised its statutory discretion and reached a decision with respect to diligence that is rational and is supported by substantial evidence. The majority errs by disregarding that decision.

## D.   Motive

Finally, I disagree with the majority's analysis and reliance on some speculative ill motive on the part of Westmoreland. The majority states that Westmoreland's motive was "patently improper" because it sought to "circumvent the law," "thwart a claimant's good faith claim," and "evade application of the collateral estoppel doctrine and the irrebuttable presumption of death due to pneumoconiosis." *Ante* at 19-20.

The majority first accuses Westmoreland of attempting to "circumvent the law," because in the ordinary case, an employer may not defend against a survivor's claim by dem-

onstrating that the miner did not have complicated pneumoconiosis. *Ante* at 19. In the same vein, the majority criticizes Westmoreland for its attempt to evade application of collateral estoppel and the irrebuttable presumption of death due to pneumoconiosis. *Id.* at 19-20. In essence, the majority concludes that because Westmoreland is seeking to use benefit modification to resist a claim for erroneous survivor's benefits that it could not defend against otherwise, its motives are improper as a matter of law. I disagree.

The ALJ found, with respect to Westmoreland's motive, that it "simply used the available legal means to attempt to protect and obtain justice for itself." 2008 ALJ Ruling at 10. Accordingly, in the ALJ's view, "where a party's action is not prohibited by law it should not be precluded simply because the party is motivated by self interest." *Id.*

In *Sharpe I*, we asked the ALJ to consider Westmoreland's motive, and once again, the ALJ faithfully carried out that responsibility. The majority's interpretation of Westmoreland's motive, discussed in more detail below, undermines the ALJ's discretion and substitutes its judgment for that of the ALJ. As an appellate court, we are not permitted to reverse the ALJ simply because we would have reached a different outcome on the same facts.

The majority opinion today rewrites the statute such that modification should only be granted where doing so would not disrupt a survivor's claim. This is a requirement not found in the text of the Black Lung Benefits Act, or any precedent, and improperly circumscribes the discretion of the ALJ to correct an erroneous decision upon a showing of a mistake of fact.

Furthermore, there would seem to be no limit to the circumstances under which a "bad motive" could be ascribed to a party seeking modification. Even during the lifetime of a black lung benefit recipient, a modification request could be

barred under the majority's logic if the factfinder concludes that the party seeking modification has an eye towards the long view, and wishes down the road to avoid a claim for survivor's benefits. Such an outcome is not consistent with "justice under the act."

In addition, the majority incorrectly scolds Westmoreland for seeking to "thwart a claimant's good faith claim[.]" *Ante* at 19. In my view, the majority improperly conflates "good faith" with "meritorious." In countless courtrooms and administrative proceedings every day, parties seek to "thwart" good faith claims by raising their own bona fide defenses. The law simply does not fault a party for taking a litigation position that is *contra* that of another party. The majority fails to recognize that Westmoreland could be (and there is no evidence to the contrary) proceeding in good faith as well. A party should not be faulted for "improper motive" where it raises a good faith defense (or, in this case, a good faith modification request), and that has the benefit of being meritorious.

## IV.

For all the foregoing reasons, I would grant Westmoreland's petition for review, thereby reversing the BRB's order and affirming the 2008 order of the ALJ. I respectfully dissent.